THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-
ror, *vs.* BARNEY MELNICK *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1914.*

1. APPEALS AND ERRORS—*rule where bill of exceptions shows
making of a motion for new trial but does not contain the motion.*
Where the bill of exceptions recites that a motion for new trial
was made and overruled and exception taken by the defendants
but does not set out the motion itself or the grounds of the mo-
tion, the defendants may avail themselves, in a court of review, of
any ground for new trial which may appear in the record.

2. CRIMINAL LAW—*when the record must be free from any sub-
stantial error.* Where the evidence in a criminal case, even when
taken most strongly against the defendants, is of a very unsatis-
factory character the record must be free from substantial error in
order to sustain the judgment of conviction.

3. SAME—*when conversation is not admissible against defend-
ants.* A conversation between the owner of stolen goods and a
third person jointly indicted with the defendants for receiving the
goods but not tried with them, which conversation tends to show
the guilt of the defendants or of one of them, neither of whom
was present at the conversation, is not admissible.

4. SAME—*when it is error to refuse to exclude answer to ques-
tion.* Where a police officer testifying for the People is asked a
question on cross-examination, and his answer, except the first few
words, is not responsive to the question but is a volunteered state-
ment which brings in a conversation with a third person implicat-
ing the defendants with the crime, though they were not present at
the conversation, it is error to refuse to exclude the unresponsive
portion of the answer.

5. SAME—*when it is error to permit assistant State's attorney
to state facts outside the record.* It is error to permit the assistant
State's attorney, in his argument to the jury, to state as a fact a

damaging matter not in evidence and to leave the jury to decide the matter upon such statement.

6. SAME—*the court should not criticise witness for defendants.* In a criminal case the court should not make remarks in criticism of a witness for the defendants nor permit the assistant State's attorney to make unfair remarks with respect to his testifying, even though he was employed at the preliminary examination as attorney for a person who was jointly indicted with the defendants but not tried with them.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

B. M. SHAFFNER, for plaintiffs in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and C. H. LINSCOTT, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

On the night of November 23, 1912, a quantity of furs was stolen from the store of one Kinzelberg. Israel Tecotzky, Barney Melnick and Morris Cohen were indicted jointly for the larceny and for receiving the stolen goods. Melnick and Cohen were tried together, were convicted of receiving stolen property, and have sued out a writ of error to review the record.

The only evidence against Melnick is contained in the testimony of Barry, a police officer, which was as follows, so far as it concerned Melnick: On March 8, 1913, Barry went to Melnick's store and told Melnick that he was going to lock him up for receiving Kinzelberg's goods. Melnick said his son was out of the store and he wanted Barry to wait until his return. Melnick said he had an important friend in the store to whom he was talking, and Barry said, "Yes, Goldstein; the thief, Goldstein." Barry asked Goldstein what business he was in, and Goldstein replied that he was in the real estate business. Barry asked, "Are you Cock-eye Goldstein?" and he answered, "No; sit down and

don't get mad." They all sat down, and Goldstein asked Barry what he was going to pinch his friend for, and Barry replied, for having Kinzelberg's goods. Goldstein said, "He ain't got Kinzelberg's goods." Then Melnick called Barry over to the side and said, "Will you let me go?" Barry said, "How do you mean?" and Melnick answered, "You might as well make a couple of hundred dollars; what in the hell do you care for Kinzelberg?" He said Kinzelberg was a thief; that the goods he lost were stolen goods; that Kinzelberg bought them of the boys and did not pay all and the boys went and took the goods away; "what do you want to bother with Kinzelberg; I will give you $200 if you will let me go." Barry then called Ryan, who was also a police officer, over, and Melnick offered it to both. Then they locked him up.

Melnick denied making any offer to Barry, and Knoblock, a court reporter, testified that he took down Barry's testimony in shorthand on the preliminary hearing before Judge Scully, and that there was nothing in his testimony about any offer of $200 and the name of Goldstein was not mentioned. This evidence is entirely insufficient to sustain the conviction of Melnick.

As to the plaintiff in error Cohen, Barry testified that having been detailed to recover Kinzelberg's goods he sent to the county jail for Sam Snyder, a burglar, and after a conversation with him went to Tecotzky's on the night of March 4, 1913. The next afternoon he went to Cohen's place of business. Cohen and his wife were there, and Barry told them that he was a salesman for shoes and wanted Cohen to go with him, telling Mrs. Cohen that they would be back in a little while. He took Cohen to the back room of Kiley's saloon, where Tecotzky and the police officer Ryan were waiting. Barry said to Tecotzky, "Is this the Mr. Cohen you mean?" and Tecotzky replied that it was. Tecotzky started to talk Jewish to Cohen but Barry told him to talk English. Tecotzky said that these were

two good coppers; that Snyder, who hauled the goods, had squealed in jail, and that "I told the truth," and here were two good fellows who would do business with them. The question was asked, "How much do they want?" and Tecotzky said, "We will come to a bargain." Cohen then said to Tecotzky, "You are bad luck to me; I never would have bought the goods if it was not for you to bring them over." Tecotzky said, "You are making as much out of the goods as anybody." They then talked a while in Jewish, and Cohen said, "If I tell you where the goods are you will not pinch us?" And Barry said, "You tell me where the goods are and we will not pinch you." Cohen then pulled a little card out of his pocket and wrote in pencil, "525 Main street, Kansas City." Cohen said the goods were in new boxes,—furs, muffs, lynx coats, and stuff of that kind. He said it was Kinzelberg's stuff, and "You go down there and you will get the goods." Barry asked him how he knew the goods were there, and he replied that he and Melnick went down there with the goods; that it was a big store where they bought stuff of that kind; that they sold them to a man named Eidelman. Barry asked him what kind of a looking man Eidelman was, and Cohen replied that he did not see Eidelman himself; that he stood at the door and Melnick went in and sold the goods. Ryan corroborated Barry as to a part of the conversation with Cohen in the saloon.

Barry, Ryan, Kinzelberg and Louis Israel went to Kansas City for the goods. They found no such store as had been described by Cohen and no trace of Eidelman or the goods. On returning to Chicago, Barry went to Cohen's store and asked him why he had sent them to Kansas City for Kinzelberg's goods, but Cohen refused to talk and told Barry to talk to his lawyer, whereupon Barry arrested him.

This was all the evidence connecting Cohen with the stolen goods. On the trial he denied all knowledge of the goods and everything in the conversation with Barry tend-

ing to incriminate him, and gave a different version of the conversation consistent with his innocence. If the conviction can be sustained, the evidence, even when taken most strongly against him, was of such a character as to require the record to be free from any substantial error.

Kinzelberg testified that he had a conversation with Tecotzky, and Tecotzky said he would try to get him the goods back. The court denied the motion of the plaintiffs in error to strike this evidence out. Tecotzky was not on trial though jointly indicted with the plaintiffs in error, and this conversation was not admissible. It tended to show the guilt of at least one of the defendants, Tecotzky himself, and was prejudicial to the plaintiffs in error.

Kinzelberg testified that his name was H. Kinzelberg. If his name was also Hyman and he owned the goods alleged to have been stolen, as charged in the indictment, these facts ought to be proved if the case should be tried again.

In the cross-examination of Barry in regard to the conversation with Cohen in Kiley's saloon, he was asked how he happened to go into that saloon. His answer and a portion of the subsequent proceedings follow:

"Tecotzky was to be there. He was going over to Kinzelberg's for bill of lading of the goods. He (Tecotzky) said, 'Don't go too near Cohen's place, you two fellows; can I meet you some place west?' and Tecotzky said, 'If you will do this thing for me I will get the bills; Cohen has got it and I saw it the other day.'

Mr. Shaffner: "Now, your honor, this is not an answer to my question and move it be stricken. (Motion denied, and exception by counsel for Melnick and Cohen.)

The court: "You asked him for it.

Mr. Shaffner: "I simply asked him how he came to that saloon.

The witness: "Ryan asked me to go to the saloon. Tecotzky said he had the bills of lading on which the goods were shipped, which were in Cohen's possession.

Mr. Shaffner: (To the court) "I simply asked him how he happened to go to that saloon.

The court: "He is telling you.

Mr. Witty: "Go ahead.

The witness: "He said he had an argument with Cohen a few days ago about the bill. He said he wanted the bill. He said, 'We have not balanced up on the money yet; I have got some money of Cohen's, if we could meet some other place; I will get the bill of lading first from Cohen.' Bill of lading for Kinzelberg's goods. Then he said, 'You can grab him; we can straighten up matters; you can get all Kinzelberg's goods.'

Mr. Shaffner: "Now, your honor, I move that the answer be stricken as not responsive to the question.

The court: "The motion is overruled. (Exception by counsel for Melnick and Cohen.)"

Neither of the defendants on trial was present at this conversation, which charged Cohen with having in his possession the bills of lading on which the stolen goods were shipped. The first five words of the answer were responsive to the question; all the rest was volunteered, except the statement that Ryan asked him to go to the saloon. It was error not to exclude this conversation.

In his argument to the jury the assistant State's attorney who tried the case said:

"He (Barry) tells you, and Ryan tells you, that they went to 525 Main street, and I can tell you exactly where that is. I lived in Kansas City and practiced law there, and I know the nature of the stores in that neighborhood.

Mr. Shaffner: "Mr. Witty has not been sworn and I object to his testifying.

The court: "Let the jury decide.

Mr. Shaffner: "He is testifying to what he knows about Main street, in Kansas City, and I want to enter an exception. (To which ruling of the court defendants, Melnick and Cohen, by their counsel, then and there excepted.)"

The inference to be drawn from the assistant State's attorney's statement was, that the nature of the stores in the neighborhood mentioned, in Kansas City, was such as to support the claim of the prosecution, and the court left it to the jury to decide from his statement.

Again, during the argument of the assistant State's attorney he said:

"It [the case] was originally tried before Municipal Judge Thomas Scully, and if he is anything except an Irishman he is a Jew. He knows them from top to bottom. He knows his district. He listened to this testimony and held them to the grand jury.

Mr. Shaffner: "Who did?

Mr. Witty: "Scully.

Mr. Shaffner: "No, he did not. He held Tecotzky but dismissed Melnick and Cohen. I take exception to the remarks of the State's attorney.

The court: "The jury will decide. (To which ruling of the court counsel for Melnick and Cohen excepted.)"

The only evidence is Barry's testimony that the plaintiffs in error were discharged at the preliminary examination by Judge Scully. It was immaterial and not a proper subject of argument, but the court submitted it to the jury and let the statement of the assistant State's attorney stand for their consideration and decision. Both of these objections ought to have been sustained and the assistant State's attorney admonished to restrain his zeal within the limits of argument upon the evidence in the case.

A witness for the defendants was called who had represented Tecotzky at the preliminary hearing. Before his examination the following colloquy occurred:

Mr. Witty: "It is unusual for an attorney to testify because he has been employed by a fugitive from justice.

Mr. Shaffner: "If the lawyer is employed by one of the defendants it is not proper unless he withdraws from the case.

Mr. Witty: "He is a lawyer for one of the defendants.

The court: (To the witness) "You can testify if you want to. The Supreme Court has criticised such evidence, but the attorney can take the stand if he wants to. (Exception by counsel for Melnick and Cohen to remarks of the court.)

Q. "You were formerly an assistant State's attorney?

A. "No; I have been connected with the——

Mr. Witty: "You bet he wasn't.

Mr. Shaffner: "Why? Is it a disgrace to be an assistant State's attorney?

Mr. Witty: "No, it is an honor, and he could not qualify.

Mr. Shaffner: "I object to that and take exception to the remarks of the State's attorney."

The criticism of the court on the witness' testimony and the remarks of the assistant State's attorney were improper and unfair both to the defendants and to the witness.

On behalf of the People it is argued that the questions which have been considered have not been preserved for review because the bill of exceptions does not contain a motion for a new trial. The bill of exceptions does, however, recite that a motion for a new trial was made and overruled and exception was taken by the defendants. It does not set out the grounds of the motion, and in such case the parties may avail themselves of any cause for a new trial which may appear in the record. *Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589.

Barry's testimony in regard to the value of the furs was hearsay and should have been rejected. Mrs. Kinzelberg's was not clear or satisfactory, but this can be obviated on another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*