People of the State of Illinois, Defendant in Error, v. Adolph C. Bydalek, Plaintiff in Error.

Gen. No. 41,750.

Opinion filed March 18, 1942.   Rehearing denied April 1, 1942.

CAMERON LATTER, JAMES E. DANIELS and ODE L. RANKIN, all of Chicago, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and JULIUS L. SHERWIN, Assistant State's Attorneys, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a writ of error from a judgment upon the verdict of a jury in the Criminal Court of Cook County, under which defendant was sentenced to the penitentiary for a term of from one to five years and

fined $1,000 for conspiracy. Defendant was indicted together with Goodsell F. Henke, James Russell and Joseph Kelly for conspiring with them to obtain money by forging and uttering a will of one Carl Krzysko, deceased, and thereby committing an illegal act injurious to the administration of public justice. Defendant Bydalek was tried alone and the principal witness for the State against him was the co-defendant Henke who was, at the time of the trial, a lawyer and had practiced in Chicago, Chicago Heights and Grant Park, Illinois, for a number of years.

Defendant urges that the verdict and judgment are against the manifest weight of the evidence; that the trial judge committed error by instructing the jury orally in violation of the Illinois statutes; that error was committed in limiting defendant's cross-examination of Henke and in giving improper instructions; that the State's Attorney made prejudicial statements to the jury, and that the court erred in overruling defendant's objections thereto; and that the conviction rests on the uncorroborated testimony of Henke and should be set aside because of the errors. The State answers that this court cannot reverse the judgment on the evidence unless the proof is so unsatisfactory as to raise a reasonable doubt of defendant's guilt; that the trial judge with propriety directed the jury orally as to the forms of possible verdicts in the case; that defendant's cross-examination was not limited; that the instructions given have been approved in the Supreme Court and that any question or instruction has been waived because the record does not show on whose behalf the instructions were given; and that the testimony of an accomplice alone can properly convict a defendant and that in this case there was ample corroboration of the testimony of Henke, the accomplice.

The defendant complains that the verdict and judgment are against the manifest weight of the evidence. The test is whether the charge in the indictment was

proved beyond a reasonable doubt. Carl Krzysko died in Chicago Heights, Illinois in June 1938. He had come to this country from Poland 35 years before and settled in Kankakee County. It appears that he was related to the family of defendant Bydalek and spent his time in the beginning of his residence here, between the Bydaleks and a Johnson family; that he later moved to Chicago Heights wherein he roomed for many years with the family of William Liesenfelt and took his meals with the family of Peter Bantz; that at the time of his death his only living relations were in Kankakee County. Following the death of Krzysko, the defendant engaged Henke to represent the defendant and the Bydalek family in getting control of the estate. Henke and the defendant thereupon investigated the matter of defendant's relationship with the decedent among friends and relatives of both the decedent and defendant. Following the investigation a petition was prepared, signed and sworn to by the defendant, asking that letters of administration in the estate of Carl Krzysko be issued to him. Henke engaged an attorney in Chicago who presented the petition to the Probate Court of Cook County and from which, said letters of administration issued to Bydalek. Copies of the letters were obtained and Henke and the defendant began their search for the assets of the decedent's estate in order to reduce them to the possession of Bydalek as administrator. Subsequently, a petition was filed in the Probate Court to remove the defendant as administrator, but, after a hearing thereon, the petition was denied. Henke and the defendant discovered that the estate of the decedent approximated $20,000, several times more than the amount they had anticipated. It appears from the evidence that the design for a spurious will had its origin in this discovery. Henke drew a false will which provided $10,000 for the defendant; various bequests for those who had a claim on his bounty by reason of blood relationship or friendship; and, in order

to make the will look genuine, $1,000 for a sister of the decedent and certain of his nieces and nephews, possible heirs rumored to be still living in Poland; likewise a bequest to the church in Chicago Heights of which decedent was a member. The will appointed as executor Conrad Linder, one of the decedent's closest advisers and friends who died prior to the drafting of the will; and as Linder's successor, the defendant Bydalek with surety for executor's bond waived. Henke obtained Russell and Kelly, residents of Chicago, to witness the spurious and forged will which was filed for probate on September 1, 1938 by Henke, who this time did not employ a correspondent in Chicago but handled the matter in his own name. The will was never probated, for its validity was questioned, and the indictment here followed.

Henke says that he and the defendant conspired to make and forge the false will and that the latter, after some discussion, gave Henke directions with respect to the provisions of said will. Bydalek denies any guilt. He claims that Henke informed him that he, Henke, had represented Krzysko at one time and had drawn a will for him; that Henke later told defendant that he had located the will; that defendant believed everything Henke told him with reference to what he did in court and elsewhere, and that he relied upon Henke.

The will, subject of the indictments, is admittedly a forgery and the only question under this point is whether the evidence justified the verdict rendered. Henke is admitted by the State's Attorney to be a scoundrel and perhaps a liar. Opposing counsel claim the defendant was a simple country man, the innocent dupe of the wily Henke. Several witnesses testified to Henke's bad reputation and many to Bydalek's good reputation.

On motion for a new trial and in this appeal, the defendant assigns error in the action of the trial court instructing the jury orally with reference to the form

of their verdict in violation of the Civil Practice Act. It appears from the record that four written forms of possible verdicts were given to the jury. On one appeared a direction in writing limiting, to the maximum provided by law as penalty for conspiracy, the amount of any fine assessed by the jury. The record does not disclose that any oral instructions were given. The trial court, according to the record, introduced with a few appropriate words, the forms of verdict read to the jury. There is nothing in the record to indicate that the trial court attempted to orally instruct the jury as to the law, as the trial court did in the case of *Ellis v. People*, 159 Ill. 337, on which the defendant relies. Direction as to the form of verdict is not an instruction on the law of the case. *Illinois Cent. R. Co. v. Wheeler*, 149 Ill. 525; Ill. Rev. Stat. 1941, ch. 110, sec. 192. [Jones Ill. Stats. Ann. 104.067]. Defendant's counsel contends that the *Illinois Central Railroad* case cited hereinabove should not control because it was a civil case decided earlier than the *Ellis* case. The *Illinois Central* case though earlier, is not inconsistent with the *Ellis* case, and though the former was a civil proceeding, the rule for instructions is the same in civil and criminal proceedings. We find no error in this action of the trial court.

Complaint is also made by the defendant that his cross-examination of the accomplice Henke was unduly limited. He claims that he was not permitted to cross-examine Henke as to why Henke had a correspondent attorney in the intestate proceedings while Henke acted alone in the proceeding to probate the will. He refers this court to page 30 of the abstract wherein it appears that objection was made and sustained to a question directed to Henke on cross-examination and it also appears that following the court's ruling on this question, the question was fully answered thereafter. The objection to and the ruling on the question was directed to its form and since the

testimony sought was later developed, we find no prejudice to defendant. Defendant further complains of rulings on objections to questions at pages 36 and 37 of the abstract. The record shows that there was considerable discussion between counsel and the trial court following the rulings, as a result of which the main question objected to was withdrawn. Again the record shows that the testimony, sought by these questions, was given; that is, that Henke was dissatisfied with the distribution of certain fees allowed in the case. We are further directed to alleged errors in rulings on page 46 of the abstract, wherein objections were made to certain questions on the ground that the same had theretofore been answered. The objections were sustained and an examination of the record discloses that the questions had theretofore been asked and answered and required no repetition. We agree with counsel that in this case where the State's principal witness is an accomplice, the defendant was entitled to full play in cross-examination, especially where such witness was the ingenious Henke. We believe, however, that defendant had every opportunity in cross-examination consistent with orderly and expeditious procedure. The defendant's cross-examination of the witness Henke begins on page 128 of the record and continues to page 248 and is resumed and finished on page 250, and we find no limitation of the cross-examination prejudicial to the defendant's case. We conclude, therefore, that this point is not sustained by the record.

The defendant further complains of alleged prejudicial argument to the jury by the attorney for the People. We have read the cases cited by the defendant in support of his point. In the *Melnick* case, 263 Ill. 24, wherein the remarks objected to are similar to those here, the court held that the trial court improperly overruled defendant's objections to such remarks but the reversal of the case was not alone on

such improper rulings. In the case at bar, however, the trial court sustained objections to the improper remarks and ordered them stricken. We cannot say, under all the circumstances in this case, that the argument complained of, prejudiced the jury against the defendant Bydalek.

The defendant complains of certain instructions. Instructions 9 and 10 he says are identical and by repetition unduly emphasize the rule stated therein. Instruction No. 10 is a much lengthier instruction than No. 9 and in addition to the paragraph stating the rule, subject of No. 9, contains other paragraphs some of which limit the meaning of the rule in the interest of the defendant and we believe remove any emphasis which might otherwise have been given such rule. Another objection to instruction No. 10, is that it is inconsistent with the theory of the State's case. We consider that the instruction was justified by the evidence in the case, and properly given. Instruction No. 7 is complained of as having no basis in the evidence; that instruction, partially set forth in defendant's brief, considered in its fullness, simply defines the crime charged in the indictment, and the giving of it was proper. We find, therefore, no error in the instructions given as complained of by the defendant.

Henke was the principal witness for the State, but the evidence discloses that though the defendant had previously engaged reputable attorneys in the community for his private business, he engaged Henke in the Krzysko matter when he must have known of Henke's unsavory reputation at the time; that following the search for assets of the Krzysko Estate, Henke asked for a specimen of decedent's signature at the home of Peter Bantz and the defendant did not then inquire why the request was made and at the trial testified that he did not know why; that though he seemed indifferent to "Uncle Carl's" welfare for years preceding the latter's death, the defendant, fol-

lowing the search for assets, requested a photograph of "Uncle Carl"; that though he and Henke had heard rumors of a will soon after Krzysko's death and had searched futilely together for a will, the defendant learned later that Henke had once drawn a will for Krzysko; that though he had discussed possible fees from Kryzsko's estate prior to "Uncle Carl's" burial, the defendant testified that he did not ask Henke what provisions were in the alleged will which Henke had since "found"; that defendant further testified that Henke would not discuss the will with defendant because of the attorney-client privilege, this, despite Henke's obvious disregard of professional ethics; that subsequent to the filing of the spurious will defendant signed a petition and an affidavit therein, in connection therewith not knowing the will was false, though he was the administrator in the intestate proceedings and in more or less constant association and discussions with Henke thereafter; that defendant also testified that he relied upon and believed in Henke during the period in which he must have known of the latter's ill repute and that he was a "simple country man" despite his several years as owner of a tavern in Grant Park, Illinois.

Having in mind the suspicion with which Henke's testimony should be regarded, but in consideration of Bydalek's testimony, all viewed in the light of the reasonable inferences drawn from the other testimony in the case, we are of the opinion that the evidence sustains the verdict and judgment.

For the reasons herein given, therefore, the judgment of the Criminal Court is affirmed.

*Judgment affirmed.*

BURKE, P. J., and HEBEL, J., concur.