The Cairo, Vincennes and Chicago Railway Company

*v.*

Caleb Woodyard et al.

*Opinion filed February 21, 1907—Rehearing denied April 18, 1907.*

1. Railroads—*act relating to enlarging objects for which corporations were formed applies to railroads.* The act of 1873, as amended in 1889, (Laws of 1889, p. 95,) providing for changing the names of corporations, enlarging the objects for which such corporations were formed, etc., applies to railroad corporations.

2. Same—*what is not an enlargement of the objects of a railroad corporation.* Where a railroad corporation is organized to "purchase, own, construct, operate and maintain" a railway between certain named termini, a resolution of stockholders to construct and operate additional lines of railway, each of which begins at some point on its present right of way and ends at some other point on the same, the effect of which is to straighten its road, does not enlarge the objects of such corporation, within the meaning of the act of 1889.

3. Same—*railroad cannot condemn land to straighten its road.* Where the termini and general route of a railroad are prescribed by the charter, leaving the determination of details to the company, the power of the company to fix the location of the railroad is exhausted after it has been exercised, and it cannot thereafter relocate its road upon a new right of way without statutory authority, and cannot condemn land therefor, notwithstanding the straightening of the road will best subserve the interests of the public.

Appeal from the Circuit Court of Edgar county; the Hon. E. R. E. Kimbrough, Judge, presiding.

R. L. McKinlay, Frank T. O'Hair, and Hamlin & Gillespie, (L. J. Hackney, of counsel,) for appellant.

H. S. Tanner, H. VanSellar, W. S. Lamon, and F. C. VanSellar, for appellees.

Mr. Chief Justice Scott delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Edgar county dismissing a petition filed in that court by the Cairo, Vincennes and Chicago Railway Company by which it sought to condemn certain lands for the purpose of building a short line of railroad. This short line, approximately two miles in length, if built, would connect at each end with the present line of appellant, and the purpose of appellant is, by building this proposed line to straighten its roadway and provide for a road-bed with a more satisfactory grade than that which exists in the portion of the road-bed which would be superseded by the new piece of track. The court below held that appellant could not exercise the power of eminent domain for the purpose of so re-locating its road.

Appellant is duly incorporated under the Railroad act of this State, and is authorized by its original charter to acquire real estate for right of way and for any other lawful purpose connected with the building and operation of its road, and to purchase, own, construct, operate and maintain (and in pursuance of its charter did purchase and operate) a railway extending from the city of Cairo, in the county of Alexander, through certain counties, to Tilton, in the county of Vermilion, in the State of Illinois, together with a branch extending from St. Francisville, in Lawrence county, Illinois, to the city of Vincennes, in Knox county, Indiana. After appellant became the owner of said railway, and on July 18, 1905, the stockholders held a meeting and by resolution sought to enlarge the objects for which the railway com-

pany was formed, so that the said railway company could, among other things, "construct, own, operate and maintain additional lines of railway, particularly described as follows." Then follows a description of the line of nine proposed separate short pieces of roadway, each beginning at some point on the present right of way of appellant and ending at another point on that right of way, the effect of each of which, if constructed, would be to straighten and shorten appellant's line of road.

It appears from the petition that the railway in question has been in operation for more than twenty years; that it passes through a portion of the State of Illinois that is either rough and hilly or undulating and greatly varying in surface level; that it was built before the introduction of modern, high-class railroad equipment and before the inauguration of the efficient methods of railroad operation now in vogue, and that it was constructed with little or no regard to economy and efficiency of operation, but chiefly with a view to cheapness of construction; that in its location hills and the high levels of surface were avoided by following waterways, making the road longer between the termini than necessary, and rendering it, by reason of its sharp curves, dangerous to persons and property being transported over the road. It further appears that the road cannot by practical engineering, unless its line be straightened, be made an efficient, modern commercial railway capable of fully answering the requirements of the communities through which it passes, or capable of being operated with such cars, engines and trains as are used upon properly equipped railroads in Illinois passing through communities similar to those through which this road passes; that during the last twenty years the portion of Illinois traversed by this highway has grown rapidly in wealth, population and mining, agricultural and other industries and needs a properly constructed, equipped and managed railroad, and that appellant has planned a re-construction of its road and changes in its rolling

stock designed to meet this want, but that its purpose cannot be accomplished unless it can shorten the line of its road, straighten the curves and reduce the grades; that to do this certain departures from the original line of the road will be necessary; that the proposed section of roadway involved in this litigation is designed as one of such departures, but that in this instance, as in all others, no other or greater departure or variation from the original line is made or contemplated than is necessary for the proper and practical operation of the road.

It is said that unless such changes can be made the road cannot be conducted with profit but must be abandoned, wherefore the public interests require that portions of the line should be re-located, so that a safe and modern road-bed may be constructed, upon which trains may be operated of a character and in a manner commensurate with the needs and wants of the thrifty and progressive· communities through which the road passes. ·

In seeking to enlarge the objects of this railway company its stockholders moved under the provisions of an act of the legislature originally passed in 1873 and amended in 1889, entitled "An act to provide for changing the names, for changing the places of business, for increasing or decreasing the capital stock, for increasing or decreasing the number of directors, for enlarging or changing the objects for which such corporations were formed and for the consolidation of incorporated companies," which is found at page 507 of Hurd's Revised Statutes of 1905. There seems to have been some question in the court below as to whether this act applied to railroad corporations. An examination of its various provisions leads us to the conclusion that it does so apply. Section 8 of the act provides for the giving of certain notice whenever any railroad corporation shall desire to consolidate with any other railroad corporation by virtue of the provisions of this act, from which it seems certain that the purpose of the legislature was to give to railroad

corporations the benefit of the act. A like conclusion was reached upon an analogous proposition in *People* v. *Rose,* 210 Ill. 582.

We are of the opinion, however, that the right or power of the appellant to proceed under the statute in reference to eminent domain for the purpose of re-locating a portion of its roadway was not changed by the proceedings of its stockholders on July 18, 1905. The portion of the statute under which they acted which is particularly relied upon is found in that clause thereof which authorizes the stockholders "to enlarge or change the object for which such corporation was formed." The object for which this corporation was formed was to "purchase, own, construct, operate and maintain" a railway between Cairo, in Alexander county, and Tilton, in Vermilion county, with a branch line from a point in Lawrence county to Vincennes, Indiana. If by the action of its stockholders it was legally authorized to straighten the curves in its lines by re-locating a portion of its roadway, it could not be said that the object for which it was formed had been thereby enlarged or changed. The object would remain the same, namely, to "purchase, own, construct, operate and maintain" a railway between the same points and not between other points, and not to points beyond those above mentioned.

The general rule is, that where the termini and general route of the railroad are prescribed by the charter, leaving the determination of details to the discretion of the corporation, the power of the company to fix the location of the road is exhausted after such discretion has been exercised, and it cannot re-locate its road without statutory authority to do so, and being without power to re-locate its road, the company is without power to condemn a right of way for a line which it cannot lawfully locate. *People* v. *Louisville and Nashville Railroad Co.* 120 Ill. 48; *Illinois Central Railroad Co.* v. *People,* 143 id. 434; *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore and Ohio and Chicago Railroad Co.* 149 id. 272; *Chicago, Burlington and Quincy*

*Railroad Co.* v. *City of Chicago,* 149 id. 457; *Chicago and Milwaukee Electric Railroad Co.* v. *Chicago and Northwestern Railway Co.* 211 id. 352.

Appellant contends, however, that it falls within an exception to this general rule, which, it avers, exists whenever the interests of the public will be best served by a change in the location of the road, and where, from a business or financial point of view, it is essential to the accomplishment of the things for which the road is built that a change should be made.

Appellant relies upon two Illinois cases as illustrative of the doctrine for which it contends. The first of these is *Chicago, Burlington and Quincy Railroad Co.* v. *Wilson,* 17 Ill. 123. In that case the charter authorized the railroad company to construct a railroad on a certain route, "with such appendages as may be deemed necessary for the convenient use of the same." Two or three years after the road had been built and the company had located its stations, depots, turn-outs, etc., it sought to condemn real estate for the purpose of constructing and maintaining thereon turn-outs, depots, engine houses, shops and turn-tables, and this court held that the completion of the road between the termini did not exhaust the power thereafter to acquire, by condemnation, real estate demanded by an increase of business, upon which to locate "appendages;"—in other words, that the company was at liberty to acquire land for "appendages" as they became necessary for the convenient use of the road. That case was not one in which the company, having elected to occupy certain real estate, sought thereafter to occupy other real estate in lieu of that first selected. The other case from our own Reports, to which our attention is particularly called in this connection, is *Fisher* v. *Chicago and Springfield Railroad Co.* 104 Ill. 323. There the Chicago and Springfield Railroad Company owned a side-track which had been constructed over a strip of land in the town of Mt. Pulaski, in Logan county, by the permission of the own-

ers of the land, no title to the land having been acquired by the railroad company. Later, it began a suit to condemn the land so occupied by its side-track. It was objected that the company could not exercise the right of eminent domain for the purpose of acquiring land for the side-track, "especially after the main line is finished," but it was held that the company had the same right to institute condemnation proceedings to acquire the land occupied by the side-track that it would have had to institute such proceedings at an earlier day. No question of re-location was there involved.

We have examined the text-books and the decisions of courts of other States to which appellant has referred us. The only one of the cases cited which can be said to be in point is that of *M. & T. R. R. Co.* v. *Devaney*, 42 Miss. 555. The force of that case, however, is destroyed by the fact that the Supreme Court of the State of Mississippi, in *Lusby* v. *Railroad Co.* 73 Miss. 360, has repudiated and overruled it and announced its adherence to the general rule. Leaving out of consideration the *Devaney case,* we think the most favorable view of the authorities relied upon by appellant is, that they support the conclusion well stated by Randolph at section 116 of his work on the Law of Eminent Domain, in these words: "A railroad company may continue to condemn for such incidental uses as the growth of business demands." It is plain that the use of real estate for the main line of a railway company is not an "incidental use."

We conclude that to the general rule above stated there is no such exception as that which appellant seeks to have us recognize.

By the proceedings of July 18, 1905, the stockholders of appellant sought to authorize the company to extend its line from Tilton, in Vermilion county, to the city of Danville, in Vermilion county. No question as to the legal effect of that action of the stockholders is presented for our consideration.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*