(No. 17049.—Reversed and remanded.)

## The Chicago North Shore and Milwaukee Railroad Company, Appellee, *vs.* The Chicago Title and Trust Company, Trustee, Appellant.

*Opinion filed February 24, 1928.*

1. Eminent domain—*when beneficiary of trust estate is not a necessary party—appeal.* In a suit to condemn property the record title to which is in the name of a trustee, the sole beneficiary of the trust is not a necessary party where his interest under the trust agreement is specifically declared to be an interest in personal property and not in real estate; and the trustee cannot, on appeal, raise the question of parties where it has filed a cross-petition alleging that it "is now, and was at the time of the commencement of this suit and for some time prior thereto, the owner and holder in fee simple" of the premises described in the petition.

2. Same—*consolidated railroad company succeeds to the right of eminent domain.* Upon the consolidation of two railroad companies the company formed by the consolidation succeeds to all the rights of each of the corporations of which it is composed, including the power to condemn lands for railroad purposes.

3. Same—*a railroad company's right to condemn for necessary switches and connections is not exhausted by location of main line.* Where a railroad company has once fixed the location of its road the power of the company in that respect is exhausted and it cannot re-locate its road without statutory authority to do so, and it is without power to condemn a right of way for a line which it can not lawfully locate, but its power to condemn land for necessary switches or side-tracks or connections is continuing and is not exhausted by the location and completion of the main line.

4. Same—*a corporation may decide upon necessity for exercise of right of eminent domain.* Where the legislature has delegated to a corporation authority to exercise the power of eminent domain the corporation has the authority to decide upon the necessity for the exercise of the right, and its decision will be conclusive in the absence of a clear abuse of the right, and courts cannot inquire into the necessity or propriety of its exercise.

5. Same—*case will not be reversed because there is no direct testimony as to failure of the parties to agree on compensation—waiver.* Where, in a condemnation suit, it is evident from the contest and the acts of the parties that they cannot agree as to the compensation to be paid for the lands sought to be condemned for a right of way the judgment will not be reversed because no

direct testimony was offered to show such inability to agree, and a land owner who has filed a cross-petition asking for damages for land not taken, contesting the case on the merits, waives the question whether there was an effort to agree upon compensation before filing the petition to condemn.

6. Same—*price of lots is not material in determining value of unsubdivided tract.* Lands which are subdivided into lots are not similar to unsubdivided or acre property, and the price of such lots is not material in fixing the value of the acre tract.

7. Same—*general rule as to admissibility of evidence of sales of neighboring property.* There is no fixed rule governing the admissibility, in a condemnation proceeding, of evidence of sales of other property which is alleged to be similar to the property being condemned, and whether such evidence is admissible is a question largely in the discretion of the trial court, its discretion being limited to deciding whether or not the property sold is similar to that condemned, in quality, nature and other characteristics.

8. Same—*mere proximity is not a proper test for admission of evidence of sales of neighboring property.* In admitting evidence of voluntary sales of land in the vicinity of property involved in a condemnation proceeding mere proximity is not a test, as the most valuable, fertile and attractive piece of property, with the most valuable improvements, may be near to barren, unproductive and unattractive land.

9. Same—*when verdict will be set aside because of improper argument.* Counsel may question the credibility or judgment of witnesses upon any legitimate ground or draw any proper conclusion from their testimony on the question of sales of neighboring property, but where counsel for the petitioner, in commenting on the testimony of a witness who was connected with such sales, refers to the purchasers as "poor suckers" who were defrauded into buying at exorbitant prices, and continues to use such argument after the court has sustained an objection to the use of the word "suckers," the verdict will be set aside for the misconduct of counsel, as counsel have no right to indulge in inflammatory language so as to arouse the passion or prejudice of the jury or to abuse witnesses or parties without cause.

10. Trial—*counsel should not indulge in vituperative argument.* Epithets, vituperation and expressions of the personal opinion of attorneys have no place in the argument to a jury, and even though objections are sustained, if the remarks are of such a character as to prejudice the jury against the party concerning whom they were made, the verdict will be set aside, especially where counsel continues the same line of argument after the court has sustained an objection.

Appeal from the County Court of Lake county; the Hon. Perry L. Persons, Judge, presiding.

Gallagher, Kohlsaat, Rinaker & Wilkinson, for appellant.

Gardner, Foote, Burns & Morrow, (William A. Morrow, and Walter M. Fowler, of counsel,) for appellee.

Mr. Commissioner Partlow reported this opinion:

Appellee filed its petition in the county court of Lake county for the condemnation, for railroad purposes, of certain land the legal title to which appeared of record in the name of appellant. Appellant filed a traverse to the petition and also a motion to dismiss, which motion specified various alleged grounds for dismissal. The motion to dismiss was heard and overruled by the court. Appellant then filed a cross-motion claiming damages to adjacent property owned by appellant which was not sought to be taken. A jury trial ensued, which resulted in an award of $26,000 to appellant for the land taken and no damages. A motion for new trial having been made and overruled, judgment was entered by the court upon the verdict and an appeal therefrom perfected by appellant to this court.

One of the grounds assigned on the motion for dismissal of the petition was that Henry F. Norcott, sole beneficiary of the trust of which the Chicago Title and Trust Company was trustee, was a necessary party. The land sought to be condemned was held in trust by appellant under a trust agreement between appellant and Norcott by virtue of which Norcott caused to be conveyed to appellant, as trustee, certain lands, including the land sought to be condemned. This trust agreement contained the following provision: "During the existence of the trust created by this trust agreement, the interest of Henry F. Norcott as beneficiary of this trust is hereby declared to be, and

at all times shall be, personal property.   The interest of Henry F. Norcott as beneficiary at all times shall be governed by the law in respect to personal property, and during the existence of the trust created by this trust agreement Henry F. Norcott, as beneficiary or otherwise, shall have no claim, title or interest, legal or equitable, in the subdivision lots or any thereof, but only an interest in that proportion of the net avails and proceeds thereof expressly provided to be paid to the manager for the account of Henry F. Norcott under the terms of this trust agreement." The title of record was in appellant, and the trust agreement showing that Norcott's interest under the trust agreement was an interest in personal property and not in real estate, Norcott was not a necessary party.   Furthermore, appellant is in no position to raise that question here, as it filed a cross-petition, in which it alleged that "the defendant, Chicago Title and Trust Company, as trustee, is now, and was at the time of the commencement of this suit and for some time prior thereto, the owner and holder in fee simple" of the premises described in the petition.

Upon the motion to dismiss, appellant contended that appellee had exhausted its power to condemn lands for right of way at the point where appellant's land is located.

The petitioner in this case is a corporation formed by the consolidation of two constituent corporations, namely, the Chicago North Shore and Milwaukee Railroad Company and the Chicago North Shore and Northern Railroad. The former corporation was organized in June, 1923, and the latter in September, 1923.   The two corporations were consolidated under the laws of Illinois in October, 1924, under the same name as the former, the Chicago North Shore and Milwaukee Railroad Company.   The consolidated corporation is the appellee in this case.   The consolidation agreement provided that appellee should have and be vested with all and singular the property and the franchises, rights, privileges and corporate powers of the con-

stituent companies. The charter of the Chicago North Shore and Northern Railroad authorized that company to construct a railroad from the city of Evanston, in the State of Illinois, to a point on the State line between Illinois and Wisconsin and to the city of Chicago, in the State of Illinois. The consolidation agreement recited that the Chicago North Shore and Northern Railroad was authorized by its charter to construct, and was then engaged in constructing, an electric railroad from Howard and Oakton streets, in the city of Evanston, westerly to a point east of and near the right of way of the Chicago and Northwestern Railway Company, at or near Niles Center, Illinois, and thence northerly and generally easterly of and within 200 feet of the right of way of the Chicago and Northwestern Railway Company to or near Five Points, in the township of Shields, Lake county, and thence northerly, describing the route in question to a point near the north limits of the city of Waukegan, where said route connected with the main line of the Chicago North Shore and Milwaukee Railroad Company. The line thus described is the line in question in this case and is designated in the record as the Skokie Valley line. The consolidation agreement also recites that the Chicago North Shore and Milwaukee Railroad Company held and operated an electric interurban railroad from Wilmette, Illinois, to Harrison street, in the city of Milwaukee, Wisconsin, and also owned and operated a branch line extending from Lake Bluff, Illinois, to Area, Illinois. This branch line is designated in the record as the Libertyville branch. This Libertyville branch runs from, in or near the village of Lake Bluff, in Lake county, in a westerly direction to the town of Area. The town of Area is now known as Mundelein. The Skokie Valley line (the one involved in this case) starts from the city of Evanston, runs northerly by way of Niles Center and along the east side of the right of way of the Chicago and Northwestern Railway Company and across the Libertyville branch of

appellee's railroad at substantially right angles at the point where the property involved in this case is located. At the point where the Skokie Valley line will cross the Libertyville branch it is the purpose of the petitioner to establish Y-track connections with the Libertyville branch, and the property in this case is sought for the purpose of establishing such connections and the transfer service between the two lines at the place in question.

By its charter the Chicago North Shore and Northern Railroad was authorized to build the line in question. The only extent to which it had used its power was to commence the building of this railroad, which it had not completed, and its power in the premises would not be exhausted until its completion. Upon the consolidation of the two roads the railroad company formed by the consolidation succeeded to all the rights of each of the corporations of which it is composed, (*Chicago, Rock Island and Pacific Railroad Co.* v. *Moffitt,* 75 Ill. 524,) including the power of condemnation of lands for railroad purposes. (22 R. C. L. 59.) Appellant's contention that the power of condemnation had been exhausted is based upon the fact that appellee had acquired a right of way just to the west of appellant's land, which extended to the tracks of the Libertyville branch of appellee's railroad. This right of way so acquired was shown to be for the purpose of crossing the Libertyville line with the main Skokie Valley line and has nothing to do with the Y-track connections. This right of way would merely permit a crossing of the Libertyville branch and would not permit any connection therewith for the transfer of traffic. The Y-track connections consist of two forks,—one bending to the east and the other to the west,—and both forks are located on the property here involved. This arrangement is to permit the transfer of traffic between the Libertyville branch and the Skokie Valley line. The piece of property sought to be taken contains 25.8 acres. On it it is the intention of appellee also to lo-

cate a number of switches, transfer tracks and storage tracks to be used in the transferring of traffic at this point. While it is the general rule that where a railroad company has once fixed the location of its road the power of the company in that respect is exhausted and it cannot re-locate its road without statutory authority to do so and it is without power to condemn a right of way for a line which it can not lawfully locate, (*Cairo, Vincennes and Chicago Railway Co.* v. *Woodyard,* 226 Ill. 331,) yet the power of a railroad company to condemn land for necessary switches or side-tracks or connections is not exhausted by the location and completion of the main line but it is a continuing one, which may be exercised from time to time as the needs of the company may require. (*State Board of Equalization* v. *People,* 229 Ill. 430.) This rule did not prevent appellee from maintaining the present suit.

It is contended by appellant that the court should have dismissed the petition on the ground that there was no necessity for taking the quantity of land described in the petition. Witnesses connected with the building of the road testified in detail as to the uses and purposes to which the land proposed to be taken was to be put and as to the amount of land necessary for such purpose. One witness who had no connection with the work and had not been actively engaged in railroad work for several years testified that in his opinion it would not be necessary to take the entire 25.8 acres. The board of directors of the appellee prior to the commencement of the condemnation proceedings adopted a resolution locating its right of way for Y-connections, side-tracks and turn-outs over the 25.8 acres in question, and authorized its acquisition by its officers, attorneys and agents, by purchase, condemnation or otherwise. Where the legislature has delegated to a corporation the authority to exercise the power of eminent domain the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclu-

sive in the absence of a clear abuse of the right, and courts cannot inquire into the necessity or propriety of its exercise. (*Terre Haute and Peoria Railroad Co.* v. *Robbins,* 247 Ill. 376; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Franzen,* 287 id. 346.) The court did not err in refusing to dismiss the petition on the ground of want of necessity for the amount of land sought to be taken.

It is contended by appellant that the court erred in refusing to admit evidence offered by appellant as to the present storage tracks of appellee. The storage tracks upon the land in question were to be used in connection with the transfer of traffic at the junction of the Skokie and Libertyville lines. The evidence sought to be introduced as to storage tracks at entirely different places and used for different purposes could throw no light upon the question of the necessity of the storage tracks to be used for transfer purposes at this point.

It is contended by appellant that the evidence was not sufficient to show that appellee and appellant were unable to agree upon the compensation to be paid to appellant for the land in question. Prior to the bringing of this suit appellee wrote a letter to appellant stating that appellee desired to acquire the property in question for railroad purposes and making appellant an offer for the same. This offer was not accepted by appellant. Where in a condemnation suit it is evident from the contest and the acts of the parties that the parties cannot agree as to the compensation to be paid for the land sought to be condemned for a right of way the judgment will not be reversed because no direct testimony was offered to show such inability to agree. (*Ward* v. *Minnesota and Northwestern Railroad Co.* 119 Ill. 287.) Appellant filed a cross-petition in this case asking for damages for land not taken, and there was a contest on the merits. This is a waiver of any question of an effort to agree upon compensation before filing a petition. *Alton and Southern Railroad* v. *Vandalia Railroad Co.* 271 Ill. 558.

It is contended by appellant that the court erred in excluding evidence offered by appellant as to sales of land in the Leatherbee tract, the H. O. Stone Lake Forest subdivision and the Delavan Smith estate, which were in the vicinity of the land sought to be condemned. The land sought to be taken is approximately in the northwest corner of a tract of 240 acres of land purchased for subdivision purposes on March 10, 1925. This tract, which is about a mile from Lake Michigan, is thirty-two miles from the city hall in Chicago. Crossing the tract from north to south is the Green Bay road, an important paved highway leading from Waukegan, a few miles to the north of this tract, to Lake Forest and then south along the North Shore to Chicago. The eastern part of this tract is within the corporate limits of Lake Bluff, and is within 150 feet of the Lake Bluff stations of the Chicago and Northwestern Railway Company and the Chicago, North Shore and Milwaukee Electric Lines. From these stations frequent suburban trains are operated to Chicago, making the run in about fifty minutes.

Three-quarters of a mile north of appellant's tract, and running west from the Green Bay road down through the Skokie valley, is the 350-acre Bartlett subdivision of what was formerly known as the Leatherbee estate. About two miles farther north, lying on both sides of the Green Bay road, is another Bartlett subdivision containing 780 acres, known as the Dady tract. A real estate firm subdivided these two tracts into acre lots and employed about 200 men and women to sell the lots. They advertised in the Chicago papers, circularized telephone subscribers, took their prospective customers by train to Lake Bluff and thence to the subdivision by motor bus. One witness testified that he personally knew of fifteen sales of acre tracts made prior to May 25, 1925, on forty-five months' contracts, payable twenty per cent cash and the balance at two per cent a month, with interest at six per cent. The contracts con-

tained a forfeiture clause, providing that in the event the purchaser failed to make any of the payments on either principal or interest the seller had a right to forfeit the contract, apply all the moneys paid as liquidated damages and to re-possess the property. Appellant offered to prove by this witness the sale price per acre of all the acre lots in the subdivision formerly known as the Leatherbee tract, to which offer the court sustained appellee's objection. It is obvious that evidence of these sale contracts could throw no light upon the fair cash market value of the land in question, which had not been subdivided.

H. O. Stone & Co., between October, 1924, and May 25, 1925, subdivided 180 acres near the south boundary of Lake Bluff into lots, with from 75 to 100 feet of frontage. Neither the 25.8 acres sought to be taken, nor the 240 acres of which it was a part, had been subdivided at the time of filing the petition herein. Lands which are subdivided are not similar to unsubdivided or acre property, and the price of such lots was not material in fixing the value of the tract in question. *Martin* v. *Chicago and Milwaukee Electric Railroad Co.* 220 Ill. 97; *Forest Preserve District* v. *Wallace,* 299 id. 476.

The Delavan Smith estate contained 59 acres. It was well wooded and gradually sloped into the Skokie valley. It was about one-half a mile from the station in Lake Forest and about two miles from the property involved in this proceeding. Near this property was the Onwentsia Golf Club, on the North Shore, which has a garden, greenhouse, garage and flowers. A part of the land is highly cultivated, part of it is woods and part lawns, with beautiful trees and ornamental gates and walks through it. It is in much higher state of improvement than the property in question. The evidence shows a wide dissimilarity between it and the property in question.

There is no fixed rule governing the admissibility in a condemnation proceeding of evidence of sales of other prop-

erty which is alleged to be similar to the property· being condemned. Whether such sales are of lands in the locality so similar in character to the land being condemned as to make evidence thereof competent is a question largely within the discretion of the trial court. (*Forest Preserve District* v. *Wallace, supra.*) Before admitting evidence of voluntary sales of land in the vicinity of the property involved in a condemnation proceeding the party offering the proof must show that the lands so sold are similar to the land in question as to locality and character. Permitting evidence of sales of dissimilar property to go to the jury can only lead to the investigation of numerous collateral issues and tend to mislead the jury. While the question whether evidence of sales of neighboring property is admissible in a condemnation proceeding rests largely in the discretion of the trial judge, such discretion does not go to the extent of admitting evidence which will be of no aid to the jury in determining the question of value but is limited to deciding whether or not the property so sold is similar to that condemned, in quality, nature, improvements and other characteristics. Mere proximity is not a test, for the reason that a valuable, fertile and attractive piece of property, with valuable improvements, may be near to barren, unproductive and unattractive land. (*Forest Preserve District* v. *Caraher,* 299 Ill. 11.) The court did not abuse its discretion in refusing to permit evidence of the sales of these various other pieces of property.

Appellant employed a civil engineer to subdivide the 240 acres. He prepared a plat and submitted it to the Lake Bluff Plan Commission, but it is not shown to have been adopted by anyone. This plat as revised by the civil engineer was offered in evidence by appellant, an objection was sustained thereto, and this ruling is assigned as error. The plat was not offered in evidence as a legal plat but it was offered for the purpose of showing the steps which had been taken before the commencement of this suit. That

question was not in controversy, but the witness was allowed to tell in detail just what he did with reference to subdividing the land, and therefore appellant was not injured by the exclusion of the plat.

Appellant offered to show by the same civil engineer that he had carried through to completion a number of drainage projects along Skokie creek and that the lands so drained were made high and dry, suitable in every respect for homes. No such project had been adopted with reference to the tract in question, and this evidence would throw no light upon the fair cash market value of this property at the time of filing the petition for condemnation.

The court admitted, over appellant's objection, evidence of sales of the Lindley farm, the Wilson farm, the Croll farm, the John Fisher farm, the Meeker farm, the Knollwood farm, the Brennan farm and the Williams farm, all of which were subdivided properties in the neighborhood of the tract sought to be condemned. Without going into this evidence in detail it is sufficient to say that in no instance does it appear that the court abused its judicial discretion in admitting this evidence.

Appellant insists that instructions 8, 9 and 10 given on behalf of appellee are erroneous. These instructions tell the jury what facts are and what facts are not to be taken into consideration in determining the fair cash market value of the land to be taken. They announced correct rules of law, and when they are considered in connection with all of the other instructions given, the jury were fully informed as to the law applicable to the facts.

Appellant contends that the preponderance of the evidence shows that the land to be taken was worth more than $26,000, that the land not taken was damaged, and that the verdict was the result of passion and prejudice occasioned by improper argument to the jury by counsel for appellee. The evidence shows that $2000 per acre was paid for the 240 acres on March 10, 1925, considered as a whole. One

witness for appellant fixed the value of the land to be taken at $180,000, another at $195,000, another at $6500 or $7000 per acre, another at $6000 to $6500 per acre, another at from $6000 to $7000 per acre, and another at $6000 per acre. A witness for appellee fixed the value of the land to be taken at $15,380, another at $22,140, another at $18,000, and another at $20,000. Appellee introduced evidence showing the sale of the Lindley farm in June, 1924, at $1500 per acre, the Wilson farm in the spring of 1924 at $1000 per acre, the Croll farm in April, 1925, at $1100 per acre, the John Fisher farm in December, 1924, at $1200 per acre, the Meeker farm in the first part of 1925 at $800 per acre, the Knollwood farm in April, 1924, at $600 per acre, the Brennan farm in 1923 at $1350 per acre, and the Williams farm in the first part of 1924 at $1000 per acre. One witness on behalf of appellant testified that the land not taken would be damaged $100,000, and another witness placed the damage at from $100,000 to $150,000. Appellee, in rebuttal, called four witnesses who testified that the land not taken would not be damaged, but, on the contrary, would be benefited.

In his opening argument to the jury counsel for appellee commented on the manner in which lots had been sold in the various tracts in the neighborhood which had been subdivided, how the prices had been determined and who determined the values. He stated that all of the witnesses who had testified for appellant had followed the same scheme for fixing the values; that they had adopted the judgment of Niles, who was connected with H. O. Stone & Co. He said: "Who were the sales made to? Were they made to men in Waukegan? Are they made to men along the North Shore? No. Made to poor suckers in the city of Chicago that will be robbed and defrauded." Objection was made to these remarks on the ground that they were wholly outside of the record and that there was no evidence to sustain them, and the court was asked to

instruct the jury to disregard them.  Counsel for appellee insisted that he had a right to characterize the people who bought land from Bartlett & Co.  The court said that he did not think counsel had a right to use such language. Counsel then said, "You mean suckers?" and the court said, "Yes."  The court sustained the objection to the use of the word "suckers" but did not instruct the jury to disregard the statement.  Counsel then proceeded: "Well, I will withdraw the word 'suckers,' then.  I will leave it to your opinion, gentlemen, what you think of it, and the method used to get them out here, and the methods used to sell the land to them; and that is what they seek to do down in H. O. Stone's subdivision if they can get away with it in time before they are found out and their little bubble has been exploded, and then you will see them run from Lake county like rats from a sinking ship, and leave the poor boobs that bought the property to stick in the mud and pay their taxes, and other things that they have to pay."  In his closing argument counsel for appellee referred to Niles as "this fat, smug gentleman who is not here now."  An objection was made and sustained to this remark and the jury were instructed to disregard it.  Later he said: "Here is the way they try to make the value of the land.  They assume they can sell it for a certain price and that the man who buys it will pay for it.  They figure it will cost so much to sell that lot, because they have their salesmen's expenses, advertising in the newspapers, circularizing their customers.  They deduct all those expenses from the price a fellow has to pay for a lot and they get their net result.  Now, that is what he was talking about.  Now, gentlemen, how many of these suckers that buy property go through with these payments?"  An objection was sustained to this remark.

Counsel had a right to question the credibility or judgment of the witnesses upon any legitimate grounds, or to draw any proper conclusion or inference from the testi-

mony, or make any proper comments based on the evidence, but he did not have the right to indulge in inflammatory language for the purpose of arousing the passions or prejudices of the jury, and he did not have the right to abuse witnesses or parties without cause. (*Chicago and Alton Railroad Co.* v. *Scott,* 232 Ill. 419.) Epithets, vituperations and expressions of the personal opinion of attorneys have no place in the argument to a jury. (*People* v. *Bimbo,* 314 Ill. 449.) Where it appears that a verdict is the result of passion and prejudice it will be set aside. (*Illinois Power and Light Corp.* v. *Lyons,* 311 Ill. 123; *McCoy* v. *Chicago and Alton Railroad Co.* 268 id. 244.) Even though the objections are sustained, if the remarks were of such a character as to prejudice the party against whom they were made the verdict will be set aside. (*Rost* v. *Noble & Co.* 316 Ill. 357; *Appel* v. *Chicago City Railway Co.* 259 id. 561; *Chicago Union Traction Co.* v. *Lauth,* 216 id. 176.) Where the court has sustained an objection to a remark, it is the duty of counsel to desist from further argument of that character. (*Bell* v. *McDonald,* 308 Ill. 329.) In *Bishop* v. *Chicago Junction Railway Co.* 289 Ill. 63, this court said: "While it is regrettable that this case must be reversed because of improper conduct of intelligent and able counsel, yet if courts of law are to be sources of justice, the rule that parties litigant, regardless of who they may be, shall have secured to them the opportunity to have the issues of their case tried by a jury free from the prejudicial influence of improper conduct of counsel must be strictly enforced."

When counsel made the statement that the lots in the various additions were sold to poor suckers in the city of Chicago and that they were being robbed and defrauded, the court merely sustained the objection to the use of the word "suckers." There was no ruling as to the balance of the statement, and it was apparently permitted to stand and to go unchallenged. There was no evidence to sustain the

charge that anybody was being robbed or defrauded. The natural result of such a charge was to bias and prejudice the jury. The court should have sustained the objection to the entire remark and directed the jury to disregard all of it, and counsel should have obeyed the ruling and not repeated the remark. In the very next statement counsel referred to the purchasers as boobs instead of suckers, and said that if Stone & Co. could get away with it in time before they were found out and their little bubble had exploded they would run from Lake county like rats from a sinking ship. In his closing he called Niles "this fat, smug gentleman," and again referred to the purchasers as suckers. Such conduct does not indicate very much desire on the part of counsel to abide the rulings of the court and to limit himself to proper argument, but indicates a purpose to disregard the ruling, persist in such conduct, and by so doing appeal to the passions and prejudices of the jury. Appellee was seeking to take from appellant its property without its consent, by operation of law. Appellant had the right to receive full compensation for the property taken, and also to recover damages for the land not taken if the evidence showed such damage. In order that appellant should have a fair and impartial trial it was imperative that the case be tried according to the rulings prescribed by law. There was a wide range in the evidence as to the value of the property taken and damage to the property not taken. The argument of which complaint was made was calculated to erroneously arouse the jury to the belief that a large part of the evidence offered by appellant as to the value of surrounding lands was based upon transactions which were questionable and not made in good faith and that the purchasers were cheated and defrauded. If such a belief was implanted in the minds of the jury they would not return a verdict giving appellant the just compensation which it was entitled to receive for its property. Appellee had no right to make such arguments, and a ver-

328—40

dict based thereon cannot be sustained. For this reason the judgment will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*