474

Jessie O. Cooney, Individually and as Administratrix of Estate of Earl T. Cooney, Deceased, Appellee, v. F. Landon Cartage Company, Appellant.

Gen. No. 9,276.

Lord, Lloyd & Bissell, of Chicago, and Hadley, Weaver & Woodward, of Wheaton, for appellant; C. H. G. Heinfelden and Gordon R. Close, both of Chicago, and Harry G. Weaver, of counsel.

Sidney F. Blanc and Thomas J. Lawless, both of Chicago, and Alschuler, Putnam & Johnson, of Aurora, for appellee; Edward F. Streit, of Aurora, of counsel.

Mr. Justice Wolfe delivered the opinion of the court.

Jessie O. Cooney, individually and as administratrix of the estate of Earl T. Cooney, deceased, filed an action for damages against the defendant, F. Landon

Cartage Company, a corporation, for the death of her husband and damages to her automobile. The declaration consists of four counts. Count one alleges that the plaintiff's intestate, while in the exercise of due care and caution for his own safety, was driving an automobile along the hard road, State Route No. 64 in DuPage county near the city of Wheaton, and ran into and collided with the rear of the defendant's truck and received injuries from which he died. The specific charge of negligence in the first count of the petition is as follows: "While said Earl T. Cooney was driving said automobile of plaintiff along said highway, as aforesaid, the defendant at said time and place, to-wit, in the night time, caused and permitted its said motor truck to stop and stand on the said highway without leaving any persons in charge thereof or with or about the same, and then and there carelessly and negligently and in violation of Section 41 (d) of the Motor Vehicle Act of the State of Illinois, failed and neglected to give warning thereof by displaying and burning flares or portable lights in the immediate vicinity of his said motor truck. The said motor truck was not stopped, as aforesaid, for the purpose of taking on or discharging passengers or complying with the traffic regulations requirements."

Count two is practically the same as count one, and charges: "While said Earl T. Cooney was driving said automobile of the plaintiff along said highway as aforesaid, the defendant at said time and place carelessly and negligently caused and permitted its said motor truck to be and stand upon said highway without leaving any person in charge thereof, or with or about the same, and with defective and insufficient lights thereon, and with no lights or other warning about the said motor truck to indicate its presence on the said highway." The first and second counts of the

petition allege that by reason of the carelessness and negligence of the defendant, the said Earl T. Cooney, while so driving along said highway with due care for his own safety, collided with said motor truck of the defendant, sustaining injuries which resulted in his death. Plaintiff asks damages in the sum of $10,000. The third and fourth counts of the petition are the same as the first and second counts with the exception that plaintiff asks for damages to her automobile in the sum of $800.

The defendant filed its answers which admitted the ownership of the truck in question but denied any negligence on the part of itself or its agent or servant who was driving the truck. In their answer they specifically charge the plaintiff's intestate was, at the time and place in question, guilty of contributory negligence that was the proximate cause of his death. The case was tried before a jury that rendered a verdict in favor of the plaintiff and assessed her damages at $7,000 for the death of her husband and $550 for damages to her automobile. The defendant entered a motion for judgment notwithstanding the verdict, which was overruled. A written motion was entered stating specific reasons for a new trial, which was overruled, and judgment was entered on the verdict. It is from this judgment that an appeal is prosecuted to this court.

The appellant has assigned numerous errors why the judgment of the lower court should not stand and the judgment be reversed. It is insisted by the appellant that the argument of counsel to the jury was improper and calculated to appeal to the passion and prejudice of the jurors and to influence them in returning a verdict for the plaintiff. The abstract and record contains parts of the argument which is as follows: ''Mr. Weaver, when he was examining you gentlemen as to your qualifications to determine whether or not

you were qualified to act as jurors, told every one of you he was very sorry and the Landon Cartage Company was very sorry that this happened. Why shouldn't they be sorry? But why are they sorry? Are they sorry for themselves or for the widow? Isn't it considerable consolation to this widow, after she has followed the body of her husband and placed it underground, in the grave, to know that the Landon Cartage Company is sorry? When she awakens in the morning all alone and faces the cold and cheerless prospect of a lonely day, isn't it some consolation to her to know that the truck driver thought the shoulder of the road was too soft and he could not run over it? Isn't it some consolation to her to know that the Landon Cartage Company had a rule about this and that that was not lived up to, but they are sorry?

"If she is successful enough to get a job and she spends her time day in and day out working at that job at woman's low wages . . .

"Mr. Johnson: I can stand for a lot of things in a lawsuit, but I cannot stand for this proposition of Mr. Heinfelden coming in here and deliberately, gentlemen, misquoting this evidence. I can stand for most anything but that. Here is what he is trying to whip this evidence around to mean to you: talking about this Highway 64, Officer Thielen was here testifying and we took him right up to Villa Park to show that in that portion of Villa Park it is marked for a 45 miles an hour zone, and that is the only 45 miles an hour zone there is between St. Charles and Villa Park; but now this gentleman says that Thielen said that the 45 miles an hour zone applied at the point where this accident occurred. Of all the nerve. After all, gentlemen, I understand it to be the duty of the lawyers to come in here and assist the jury, help you in arriving at what the just and true verdict in the case ought to be. That is what I felt it my duty to do. I

brought into you every witness I could find so you would have every scrap of testimony there is to this matter, so you could perform this solemn duty that you have thrust upon you when you enter upon jury service. This gentleman, not only does he produce no one; not one witness does he bring to you; not one scrap of information does he bring to you; and then on top of that deliberately gets up before you and misquotes the evidence.

"MR. HEINFELDEN: Now, your Honor, I object to that statement, that I deliberately misquoted the evidence.

"THE COURT: I rather think that is a pretty serious charge. I think a lawyer might draw his own inferences.

". . .

"MR. JOHNSON: Here is Cooney traveling at 60 miles an hour. Let's say that. Divide that into 5280 feet and you will find that every second you are traveling 88 feet. He would not be able to see this truck driving along there until he got within a few hundred feet of it, and this whole thing happened in a split second; two or three seconds and this thing is all over. During that two or three seconds Mr. Heinfelden would have Cooney doing, oh, just everything. Getting off the road, or anywhere; do not get anywhere near this road if the Landon Cartage Company is on it. They do not have flares; they do not have kerosene lamps, they do not have anything. They come out on the highway and they are in full possession of it; and then these gentlemen come before you and say, 'do not have a prejudice against us.' My God, gentlemen, before I came in here yesterday in this lawsuit I did not feel prejudiced against truck companies, but I am today. I am prejudiced against people who flaunt the law as they do. I am prejudiced against a company that has a lawyer in it and does not see that the men

working for it obey the law. I am prejudiced against that kind of outfit. I am prejudiced against an outfit that will take a great big truck like that and put it out on the highway and not have it properly protected, or see that the driver does not put his flares out if he does have to stop.

"Gentlemen, I have tried a lot of these cases, but I must confess to you that the negligence in this case on the part of this truck company is the worst I have ever seen. It is the worst. Why, look here. How could this accident have been avoided? If there were flares on that truck, there would have been no accident. They did not have flares; and if they were looking to have an unusual situation there was nothing to stop them from having the whole back end outlined with red lights like a lot of these trucks do and by companies that want to make some compliance with the law and who want to give the public some protection while out on the highway.

"MR. HEINFELDEN: I object to that statement.

"MR. JOHNSON: All right.

"MR. HEINFELDEN: Just a moment.

"THE COURT: I presume your inference will have to be based on the evidence.

"MR. JOHNSON: I think it is a reasonable inference, your Honor.

"MR. HEINFELDEN: No, it is not. This truck had lights all over the back end to comply with the law, and all around the side.

"THE COURT: I think that is a proper objection.

"MR. HEINFELDEN: I ask the Court to instruct the jury to disregard that statement.

"THE COURT: They may disregard it.

"MR. JOHNSON: After this gentleman got out there, when he did not have his flares, when the truck began to sputter, then the accident could have been avoided. All he needed to do, unless he was worried about get-

ting the tires dirty, would have been to pull off on that shoulder; and he came here and testified before you, he told you that the truck sputtered and it ran 30 or 40 feet. That is far enough to get off on the shoulder and get out of the way, and if he had done that there would have been no accident. After he got out of his truck, instead of wandering up and down the highway like a chicken with his head off, he could have flagged somebody down; I think somebody would have helped him in his emergency and help protect people lawfully on the highway; but he does none of these things. And then a little later on he told you he walked west and then he come back and walked east and he got up to a tavern and then he heard a crash; but what is a crash or two among friends? He heard a crash and it came from around the truck somewhere, yet the truck driver did not pay any attention to the crash; the next thing he did was to go into the tavern and get a fellow to take him to get some gas. Somebody might be dying on the highway; he might be able to help, but what is a crash or two? What does he care? Gentlemen, they do not seem to care at all how they operate. They are negligent here. They are just the limit.''

We find nothing in the abstract or record that justifies such argument to the jury. Practically the only question in the case for the jury to decide was whether the plaintiff's intestate, just before and at the time of the accident, was in the exercise of ordinary care for his own safety. Such argument could in no way be beneficial or helpful to a jury in solving this question. The Supreme and Appellate Courts have reversed cases for less objectionable arguments than in this case. *Bishop v. Chicago Junction Ry. Co.*, 289 Ill. 63; *Wabash Ry. Co. v. Billings*, 212 Ill. 37; *Chicago & Alton Ry. Co. v. Scott*, 232 Ill. 419; *McCarthy v. Spring Valley Coal Co.*, 332 Ill. 473.

The trial court, when the objection was made to this inflammatory argument, properly sustained the objection to the same and admonished the jury to disregard it. Whether the attorney influenced the jurors or prejudiced them against the truck company, as he said he was prejudiced, no one has any way of knowing. We find nothing in the abstract or record of any remark at the examination of the jurors that would call for such argument as indulged in by the attorney in regard to the sympathy of the defendant for the plaintiff. We find nothing in the record to sustain the argument that the defendant's attorney had deliberately misquoted the evidence in regard to the speed at which the plaintiff's intestate was driving at the time of the accident. It appears to this court that this argument was solely for the purpose of appealing to the prejudices of the jurors and was wholly improper.

Complaint is made in regard to several instructions that the court gave on behalf of the plaintiff. We have examined these instructions and we think they fairly state the law and were admissible under the pleadings in the case. It is also assigned as error that the court refused to give several of the defendant's tendered instructions. We find no serious objection to these instructions, but they were covered by other given instructions in the case, and on the whole we find that the jury was fairly instructed. We do not attempt to pass on the merits of the case as disclosed by the evidence but on account of the inflammatory nature of the argument to the jury the case will be reversed and the cause remanded.

*Reversed and remanded.*