The Chicago and Alton Railroad Company, Appellant,
*vs.* Horton E. Scott, Appellee.

*Opinion filed February 20, 1908.*

1. Eminent domain—*when instruction relating to damages is erroneous.* An instruction in a condemnation case which authorizes the jury to consider the damages arising from all the sources shown by the evidence is erroneous, where the evidence in the case includes improper elements.

2. Same—*effect upon land remaining does not enhance value of the land taken.* It is not proper, in a condemnation case, to permit witnesses to include in their estimate of the value of land actually taken the damages resulting to the remaining land.

3. Trial—*court should prevent attorney's abuse of witnesses.* It is the duty of the trial court, upon hearing an attorney abusing his privilege, under the guise of argument, by making an unwarranted attack upon the parties or witnesses, to check the attorney and preserve its own dignity by compelling him to obey its orders.

4. Same—*duty of court is not always performed by sustaining objections.* The duty of the trial court to protect the parties and witnesses from unwarranted abuse is not discharged by mildly sustaining objections to the remarks of the offending attorney and telling the jury to disregard them, where the attorney is permitted to continue his abusive and unwarranted attack for the purpose of arousing the prejudice of the jury.

Appeal from the County Court of Morgan county; the Hon. Francis E. Baldwin, Judge, presiding.

Kirby & Wilson, (F. S. Winston, of counsel,) for appellant.

M. T. Layman, and John A. Bellatti, for appellee.

Per Curiam: This is the same condemnation suit in which a judgment in favor of appellee for $400 for land taken for right of way and $4150 for damages to land not taken was reversed on a former appeal. (*Chicago and Alton Railroad Co.* v. *Scott,* 225 Ill. 352.) A statement of the situation of appellee's farm, the width of the right of

way, the manner in which it is taken, the grade of the railroad across the farm and the location of the improvements, together with a plat of the premises, will be found in the opinion then filed. The cause was re-instated in the county court, and upon a second trial there was a verdict for $360 for land taken and $3640 for damages to land not taken. The court overruled appellant's motion for a new trial and rendered judgment on the verdict. An appeal to this court was then allowed to appellant and was perfected.

The witnesses for the petitioner fixed the value of the farm with its improvements at from $120 to $150 per acre, which was their estimate of the value of the land taken, and in their opinions the damages to land not taken ranged from $5 to $20 per acre. The witnesses for the defendant valued the farm with its improvements at from $145 to $175 per acre, and one of them valued the improvements at from $3500 to $4000, and the land without the improvements at $125 to $130 per acre. The opinions of the defendant's witnesses as to the value of the land taken varied from $145 to $600 per acre, and they estimated the damages to the land not taken at $30 to $60 per acre. The defendant himself testified that the value of the farm was $200 per acre, the value of the land taken $300 per acre and the damages to the land not taken $50 per acre. The verdict of the jury was at the rate of $159.24 per acre for the land taken and $30.91 per acre for damages to the 117.74 acres not taken.

Some of the witnesses for the defendant, in testifying to the market value of the land taken, said that it was worth more, although no better than the rest of the land, because it left the farm in worse shape, and the court permitted attorneys for the defendant to ask witnesses what the land taken was worth in the way it was taken, and whether the tract taken out of the farm in the way it was taken would sell for more per acre than the whole tract. In this the court erred, since it permitted the witnesses to duplicate

their estimate of damages to adjoining lands. The witness who fixed the value of the land taken at $600 per acre clearly included in that valuation the damage to the remainder of the farm, and a witness who said that the land taken would be worth per acre what one would have to pay for it as it was taken out of the farm, included such damage. Two witnesses considered that there would be a depreciation of the land not taken on account of the liability of children to go on the railroad and be killed; and one of them said that the amount one would figure the depreciation on that account depended upon how much he would think his child's life worth. That witness also considered the fact that when grass was short in the pasture the stock would be liable to push the railroad fence down and get on the track and be run down and killed. A witness was permitted to include as an element of damage to land not taken the noise of the locomotives and smoke, although the dwelling was 593 feet from the track, and no building was near enough to make noise or smoke an element of depreciation in market value. This evidence being before the jury, the court by the fifth instruction authorized the jury to consider the damages arising from all the sources shown by the evidence in ascertaining and assessing the amount of damages occasioned by the fair cash market value of the land not taken, and as the evidence included improper elements the instruction was erroneous.

An attorney named John A. Bellatti addressed the jury in behalf of the defendant and made use of the following language concerning the witnesses for the petitioner: "Oh, they buy or hire and send them down there." Objection being made, the court sustained it, and the attorney then continued: "We withdraw the word 'buy' and use the word 'hire' instead of 'buy.' These people were hired by the railroad company to go down there. Do you believe the railroad company hire men to work against them? They expect to get some benefit from the men. * * * Old man

Rawlinson wouldn't accept a bribe." The attorney for petitioner again objected, and the attorney making the argument said: "Put it down,—all of it; I have a right to use any illustration I want to;" and the court said, "Counsel will not charge any party with crime." The attorney resumed his speech, as follows: "I have not charged any one with crime. I am talking about these men being hired to go and look at this land and then come here to testify. These witnesses are hired to make evidence for the railroad company and will get their pay after their evidence is given in." Objection was again made and the court sustained the objection, saying, "The jury will not regard that statement." The attorney, however, continued his argument along the same lines, making certain irrelevant and improper remarks concerning the relations between railroads and the courts, and concluding with this statement, after an objection had been made and sustained: "Put it in the record; railroads don't want to be fair in any way, shape or form."

It was the right of the defendant to be heard through his attorney in argument to the jury, and the fullest freedom of speech as to any matter within the record of the case should be accorded to the attorney. It would not have been improper for him to question either the credibility or judgment of the witnesses for the petitioner upon any legitimate ground, but he had no right to indulge in violent or inflammatory language for the purpose of arousing the prejudices and passions of the jury nor to insult or abuse witnesses or parties without cause. In this case there was nothing whatever to justify the indecent assault made upon the witnesses or the attack upon the petitioner. One of the witnesses was engaged in the real estate business; another was an auctioneer, who had been selling farms quite extensively in Morgan county twenty years; one had been sheriff of the county; one had been assessor, and another was a farmer owning 1100 acres in the vicinity of this farm and other farms in other places. They were cross-exam-

ined as to whether they had been paid anything for examining the land, and said they had not and did not go in the employ of the petitioner. The only thing which is claimed to afford any pretense for the invective and abuse against them was the answer of one who said: "I have never been paid anything for my time; I am supposed to be paid; I hope so;" and that afforded neither justification nor excuse for what was said. The person mentioned as "Old man Rawlinson" was not a witness, and we do not discover anything about him in the record. It is true that when objections were made the court sustained them, and in one case said, "Counsel will not charge any party with crime," but the court did nothing further and permitted the attorney to go on in the same line of argument and with the same kind of abuse. A party cannot object in this court if he made no objection in the trial court, but if he does object there, the court does not discharge its duty, in all cases, by a merely mild and perfunctory sustaining of the objection. A court owes a duty of protection to witnesses and parties, and especially to witnesses, and hearing an attorney, under the guise of argument, abusing his privilege, should, either upon objection or its own motion, check the attorney, and not only do that, but preserve the dignity of the court by compelling obedience to its order. (2 Ency. of Pl. & Pr. 750.) It is the duty of a court to preserve its own dignity and the respect due to the courts and the administration of the law by not allowing an attorney, under the pretense of arguing the case, to indulge in abuse of parties or witnesses. (*City of Salem* v. *Webster,* 192 Ill. 369.) The power vested in the court should have been promptly used in this case at the outset by stopping the line of argument upon which the attorney had entered and endeavoring to remove the prejudices excited by his language. The court failed in its duty, and the mere sustaining of objections was no adequate remedy for the evil done. As was said by the Supreme Court of Wisconsin in the case of *Sullivan* v. *Collins,* 107 Wis. 291:

"The least that a self-respecting court can do under such circumstances is to stop such practice in the presence of the jury and not allow it to proceed with simply a perfunctory sustaining of objections." In this case the attorney was permitted to continue the same line of argument without so much as a rebuke, and was even permitted to include in his jeremiad the courts which are the shield and protection of a citizen against wrong and oppression, whether arising out of corporate power or from any other source. Not only has nothing ever occurred which would justify the disquietude of spirit respecting the courts manifested by the attorney, but the remarks were a gross violation of the privilege of counsel. It would be a reproach and disgrace to the law and the courts if cases should be tried and the rights of parties determined upon such grounds as the attorney presented to the jury as arguments in this case or if a party could be permitted to retain the benefits of a verdict and judgment obtained by such means.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*