(No. 15472.—Reversed and remanded.)

ESTELLE L. MATTICE, Defendant in Error, *vs.* NATHAN N. KLAWANS, Plaintiff in Error.

*Opinion filed April 14, 1924—Rehearing denied June 5, 1924.*

1. APPEALS AND ERRORS—*the Supreme Court cannot determine preponderance of evidence.* The judgment of the Appellate Court affirming that of the trial court in a suit at law precludes the Supreme Court from weighing the evidence to determine where the preponderance lies, and the jurisdiction of the Supreme Court is limited to a review of questions of law.

2. SAME—*the trial must be free from error where evidence will support verdict for either party.* Where the evidence is such that the jury might reasonably return a verdict for either party, the trial must be conducted in an orderly manner and be free from any error that is likely to influence the jury.

3. TRIAL—*court should stop improper argument on stricken evidence.* In a suit for personal injuries, where there is no evidence that the plaintiff's hip was fractured but her counsel on re-direct examination elicits from her a statement that her physician advised her to rest on account of her "hip being fractured," and the answer is finally stricken although an objection to it was at first overruled, it is error to permit counsel for the plaintiff to argue to the jury the extent to which they should disregard evidence of a fracture, thereby, in effect, emphasizing and magnifying the improper evidence.

4. SAME—*counsel should not argue facts not proved.* It is error sufficient to reverse a judgment to permit an attorney to argue, against objection, matter not in evidence and pertinent to the issue or to assume facts to be proved when they are not.

5. SAME—*plaintiff cannot be required to submit to physical examination of injuries—argument.* The plaintiff in an action for personal injuries cannot be required to submit to a physical ex-

amination as to her injuries, and it is improper for counsel for the plaintiff to argue to the jury that the defense could have asked plaintiff to submit to an examination but did not do so, as such argument is a mis-statement of the law.

6. SAME—*when a new trial will be granted because of mis-statement of law in argument.* Where counsel, in his argument, has deliberately and repeatedly mis-stated the law to the jury and it is probable that the verdict was obtained by such misconduct a new trial will be granted.

7. SAME—*what argument is improper as prejudicing the jury against witness.* It is improper for plaintiff's counsel to argue that a certain physician testified as he did for the defense because the defendant's counsel "got to him first," thereby suggesting that the doctor gave biased testimony, as the mere fact that the defendant subpœnaed the witness first would not have prevented the plaintiff from subpœnaing him and taking advantage of any information the doctor had.

8. SAME—*what reference to argument of opposing counsel is improper.* It is improper for counsel to refer in his argument to the fact that the opposing counsel did not state in his argument whether he did or did not talk to a certain witness before the witness was called, as the opposing counsel would have had no right to make such statement in his argument to the jury.

9. PRACTICE—*when new trial will be granted because of prejudicial misconduct or argument of attorney.* A verdict obtained by unfair and unprofessional conduct of an attorney will not be permitted to stand, and where the record shows that an attorney has deliberately and repeatedly indulged in prejudicial argument to the jury, the effect of such misconduct cannot be measured and the only remedy is to grant a new trial.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. HARRY B. MILLER, Judge, presiding.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, (CHARLES F. RATHBUN, and WILLIAM H. SYMMES, of counsel,) for plaintiff in error.

A. H. RANES, and CORINNE L. RICE, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This cause is here by writ of *certiorari* to review the judgment of the Appellate Court for the First District affirming a judgment of the circuit court of Cook county in favor of Estelle L. Mattice, defendant in error, for injuries arising out of the negligent operation of an automobile belonging to Nathan N. Klawans, plaintiff in error.

Defendant in error, the only witness who testified concerning the occurrence, told the following story: About seven o'clock in the evening of October 8, 1917, as she was leaving a street car at the corner of Roscoe street and Broadway, in Chicago, an automobile struck her and crushed her between the left front fender of the automobile and the right-hand side of the street car; that she had hold of the hand-rail of the street car with her left hand and was facing north at the time the automobile struck her; that she screamed and a number of people came out of the car; that the automobile was backed and she was released; that she took a notebook from her pocket, stepped up to the automobile and asked the man at the wheel his name; that there were two men in the automobile; that they refused to give their names; that she copied the license number, which was 207,771, in her notebook; that she had eaten dinner with a woman at a restaurant; that they boarded the street car together and rode north on Broadway to Roscoe street; that the woman left the street car just ahead of her; that the woman saw her struck by the automobile; that she saw the woman standing on the sidewalk after the accident but that witness did not speak to her about it; that she knew the woman by sight, had talked with her and had eaten with her several times in a public eating house; that at that time she knew her name but that she did not now remember it; that she did not take the woman's name after the accident and that the woman did not walk home with her; that wit-

ness left the scene of the accident and walked to her home, five blocks away, and walked up two flights of stairs to the third floor, where she lived; that she did not suffer much pain after the accident and did not notice she was hurt until she began to climb the stairs; that during the night she awoke with pain in her side and right hip and left shoulder; that from that time until the day of the trial she suffered great pain; that on the morning of October 10 Dr. Loeser made an examination of her body; that she was taken to a hospital, where an X-ray examination was made; that Dr. Loeser bandaged her body about the hips and ribs with adhesive tape; that liniments were applied and the bruised parts of her body massaged; that Dr. Loeser treated her at the hospital every day until November 2, when she left; that Dr. Cox also examined her at the hospital; that Dr. Loeser lived in Chicago; that she knew his address and telephone number and that she saw him about a week before the trial; that the conductor of the street car did not ask for her name or address and she did not ask for his name; that none of the people who came out of the street car asked for the names of the men in the automobile and that she did not ask any of them for their names; that one man told her he would give her his name, but she did not write it in her notebook; that she did not know the driver of the automobile which struck her, but that in July, 1920, she learned that plaintiff in error in 1917 was the owner of an automobile bearing Illinois license number 207,771; that she consulted a telephone directory and ascertained his residence; that she went to his house and recognized him as the man who was in the automobile which injured her.

Plaintiff in error testified that on October 8, 1917, he lived about four blocks from the scene of the accident; that he owned an automobile; that his son usually drove it for him; that he did not know whether he passed the intersection of Broadway and Roscoe street the evening in question, but that he knew he did not strike defendant in er-

ror or any other woman at that time, or at any other time, at that intersection; that the first time he ever saw defendant in error was when he saw her in court at the time of the trial; that never, at any time while he was driving with his son, did she ask his son his name; that early in 1918 a man called him by telephone, stated that he was an attorney, and charged him with having struck a woman with his automobile about three months before.

Lester H. Klawans, son of plaintiff in error, testified that he resided with his father and that occasionally he drove his father's automobile; that he did not on October 8, 1917, nor at any other time, at the intersection of Broadway and Roscoe street, nor at any other place, injure defendant in error nor any other person with his automobile, and that at no time while he was driving his father's automobile did a woman ask him for his name and address.

Our jurisdiction in this case is limited to a review of questions of law. The judgment of the Appellate Court has settled all controverted questions of fact and precludes us from weighing the evidence to determine where the preponderance lies. It appears from the brief statement of facts which we have made that the judgment rests upon the unsupported testimony of defendant in error, which is directly contradicted by the testimony of plaintiff in error and his son. There is nothing in the records of the police department of the city of Chicago or the street railway company showing that an accident occurred at the place and time fixed by defendant in error or that one was reported. Notwithstanding there were many witnesses of this accident, if it occurred, defendant in error alone testified, and the failure to call others is not satisfactorily explained. The attending physicians were available to defendant in error and yet she called neither of them as a witness. Plaintiff in error called Dr. Cox to the stand, and the doctor stated to the court: "Judge, I decline to testify; I don't care to be a witness." The court required him to be sworn,

and he was asked for his name, residence and profession and then excused. These facts are pointed out solely for the purpose of showing that the jury might reasonably have returned a verdict for either party, and that where that is the state of the record the trial must be conducted in an orderly manner, so that the jury will not be improperly influenced. This judgment must be reversed because of improper and prejudicial argument on the part of counsel for defendant in error. Other errors alleged will not be considered, for the reason that the same questions are not likely to arise on another trial.

On re-direct examination of defendant in error this question was asked: "You were asked if Dr. Loeser didn't tell you to rest on account of rheumatism, and you said 'No.' Now, what did he tell you to rest for?" And this answer given: "He told me that I must rest and wear that belt on account of my hip being fractured." Objection to the question and a motion to strike the answer were overruled. Later the court struck the answer from the record and instructed the jury to disregard the statement. There was not in the record any evidence of a fracture of her hip or any evidence from which it might be reasonably concluded that her hip was fractured. Notwithstanding this, counsel for defendant in error made the following argument to the jury: "I say that the rulings of the court did not rule out a fracture. What the court said was, 'The words that they used in regard to a fracture goes out.' * * * But the jury has the right to draw whatever conclusion they may draw from it. * * * Now, then, about the fracture. He undertook to tell you that you have no right to—that you must put out of your mind a fracture. Nothing of the kind, gentlemen. You must put out of your mind the fact that some doctor said that he found some evidence of a fracture. Yes, you must do that; but you do have the right to take into consideration what happened, what followed the accident, the condition that she was in

after the accident, how long she was laid up, etc., and if you believe from all of that evidence that there must have been a fracture there, then you have the right to so find. * * * The specific evidence that someone said of a fracture, or the things that they examined by which they would say there was a fracture, is out of this record,—absolutely out of it. You should disregard it; but you do not have to lay aside your common sense when you consider what happened afterwards and her condition following that." This was a direct invitation to the jury to find that the hip of defendant in error was fractured, without any evidence to support such a finding. Counsel could have had no other purpose in making the argument and no other reasonable conclusion could have been drawn from it. It was immaterial, in so far as his client's right to recover was concerned, whether her hip was fractured or whether her disabilities were due to sprain or bruise or any other injury of her body. He had obtained from his client an improper statement to the effect that her attending physician had told her that she must wear a belt because her hip was fractured, and notwithstanding the fact that this hearsay evidence had been stricken from the record he emphasized and magnified it in his argument to the jury. Repeated objections were made to this line of argument, and the court stated repeatedly that all evidence tending to show a fracture had been stricken from the record. The court, however, added to this ruling the following statement: "Counsel, however, may draw inferences that he can from the evidence that is in the case." The court erred in not effectively stopping this line of argument and giving the jury to understand that the argument was improper and that damages could not be allowed on the theory that defendant in error had suffered a fractured hip. (*Herricks* v. *Chicago and Eastern Illinois Railroad Co.* 257 Ill. 264.) It is error to permit an attorney to argue assumed facts not proven and to

leave the jury to weigh such unproven assertions. *People* v. *Melnick,* 263 Ill. 24.

Dr. Small testified, in answer to a hypothetical question, that the condition of defendant in error could result from rheumatism, and that it was his opinion that the condition of her spine and ribs was not the result of a collision, because she could not have walked five blocks to her home and climbed two flights of stairs immediately after she was injured. In his closing argument counsel for defendant in error, after paying his compliments to an expert witness who "undertakes to testify to something that he never saw and that he knows nothing about," continued: "Now, if they didn't believe that her condition was as she says it is and as her doctors who examined her say it is, why didn't they, when she was on the witness stand, say to her: 'Mrs. Mattice, are you willing to permit Dr. Hall or Dr. Small examine you and come into court and tell this jury what they found?'" An objection to this line of argument was overruled, and counsel continued: "You had the right to ask that question and we had the right to refuse an examination or to grant it, as we might see fit; but you didn't ask it. Now, gentlemen of the jury, why didn't they ask it? Why didn't they say to her: 'Are you willing that these doctors or some physician appointed by the court,— some competent physician who is disinterested in this case,—may examine you and come in here and tell this court and this jury what he finds?' Did they ask it? Not once, gentlemen; not once. Why not? Why didn't they ask it? They had the right to ask it, and if she had refused to allow it then he would have had the right to argue to you gentlemen: 'You say these things are there; there was very little between you and us knowing what is there; why didn't you let these doctors examine you and come in here and tell this jury about it?'" Another objection to the line of argument was overruled, and counsel continued: "Now, gentlemen, don't misunder-

stand me. I do not want to mislead you. They have the right to ask her that question, and if she doesn't want to submit to an examination she can deny them the right to have the examination. She could refuse to submit to an examination; and then they would have the right to argue to this jury the fact that she refused to let another doctor examine her. Now, that's the law, gentlemen." The trouble with all this argument is that it is not the law. We have quoted but a very small portion of an extended discussion of this subject. Repeated objections were made and overruled. The settled law of this State is that the plaintiff in an action of this kind cannot be required to submit to a physical examination as to his injuries, (*City of Chicago* v. *McNally,* 227 Ill. 14,) and it is but an evasion of that rule to permit the plaintiff to be required to state to the jury that he is not willing to submit to such an examination. To permit such a question to be asked in the presence of the jury practically compels him to submit to the examination because of the unfavorable effect likely to be produced upon the minds of the jury if he refuses. Medical experts are not infallible, and however conscientiously and carefully the examination is made there is a possibility that an erroneous conclusion may be reached. There is no law under which the court could direct or control such an examination, and until the people of this State, acting through their representatives in the General Assembly, determine that the administration of justice requires that such authority be vested in the courts, defendants in personal injury actions will not be permitted to do indirectly what they cannot do directly. Counsel for plaintiff in error, recognizing this rule of law, did not ask the question of defendant in error and repeatedly objected that counsel for defendant in error was not correctly stating the law in his argument to the jury. The court erred in overruling these objections. Where counsel has deliberately and repeatedly mis-stated the law to the jury and it is probable

that the verdict was obtained by such misconduct a new trial will be granted. *Peters* v. *Chicago Railways Co.* 307 Ill. 202; *Ravenscroft* v. *Stull,* 280 id. 406.

After stating to the jury that he would have been better satisfied with his case if his client had procured the names of some of the witnesses of the accident, counsel continued with this line of argument: "Now, you must remember this: that under the rules of evidence,—and he steered clear of this,—I could not have her say what that conductor said to Mr. Klawans. It would have been absolute and reversible error in this record if I had attempted it. It may seem queer to you, but that's the rules of evidence. I couldn't bring before this jury a single word that any man of the street car company said there; but he could, on cross-examination, if he had wanted to and if I had not objected. He could have asked Mrs. Mattice, 'What did the conductor say to Mr. Klawans?' Did he do it? You know he didn't. * * * He criticises us because we didn't show what the conductor said, and now he objects to my telling you that I couldn't show it. Is that fair?" To an objection to this line of argument the court replied, "Counsel will argue only what is in the record." Counsel continued: "That's right, and that's what I'm doing. I ask you, gentlemen, if anyone in this case testified as to what the conductor said? Did anyone ask that? It would not have been proper for me to. I couldn't show it. I couldn't ask her, 'What did the conductor say to Mr. Klawans?' I wouldn't dare do it,—it would be reversible error. I couldn't do it, but he————," and here the court finally stopped him. The foregoing quotation of this line of argument is a sufficient demonstration of its impropriety. We cannot believe that counsel was so ignorant of elementary principles of law as to believe he had a legal right to make this sort of an argument, so we must assume that he deliberately transgressed the rules governing the orderly trial

of a lawsuit for the purpose of confusing and misleading the jury. There is not a suggestion anywhere in the record that the conductor said anything to anybody, much less that he said anything to plaintiff in error. This argument assumes that plaintiff in error was present at the scene of the accident and that the conductor talked with him. Again the court was remiss in its duty in not exercising the powers inherent in it as a factor in the administration of justice. It is error sufficient to reverse a judgment to permit counsel to state, against objection, matter not in evidence and pertinent to the issue or to assume *arguendo* facts to be proven when they are not. (*Marshall* v. *Olson*, (Ore.) 202 Pac. 736.) It was error for counsel to suggest to the jury that he would have waived objection to incompetent testimony if opposing counsel had offered it. *Blaisdell* v. *Davis*, 72 Vt. 295, 48 Atl. 14.

In an appeal to the jury not to indulge a presumption against defendant in error because her attending physicians were not produced, counsel stated: "You know from the evidence that there isn't a thing that we could have produced that isn't produced that was not equally accessible and available to them. Take Dr. Davis, who was accessible to both of us, but they got to him first." Objection was made to the statement "got to him first," and counsel explained that he meant that plaintiff in error subpoenaed the doctor first. It is apparent from the line of argument that he did not mean anything of the kind, but that he meant that Dr. Davis gave biased testimony because plaintiff in error had influenced him. If that was not the purpose of his argument then there was no purpose at all. The mere fact that plaintiff in error subpoenaed Dr. Davis first would not have prevented defendant in error from subpoenaing him and taking advantage of any information the doctor had. Dr. Davis had treated defendant in error for rheumatism prior to the time she claims she was injured, and so it is apparent that he was not an unimportant witness. It was not proper for

counsel to suggest that Dr. Davis was giving biased testimony because plaintiff in error "got to him first." (*Chicago and Alton Railroad Co.* v. *Scott,* 232 Ill. 419.) In his argument counsel also referred to the fact that opposing counsel had not stated in his argument whether he did or did not talk to Dr. Davis before he called him as a witness. This line of argument was improper because counsel had no right to testify in his argument to the jury.

In the abstract there are pages of argument of the character quoted in this opinion, but no useful purpose can be served by continuing the quotations. It is the province and duty of the courts to see that every litigant has a fair trial in accordance with the law, and a verdict obtained by unfair and unprofessional conduct of an attorney will not be permitted to stand. While it is true that an attorney may in the course of a trial inadvertently make improper remarks, the prejudicial effect of such a statement is usually removed where the court promptly sustains an objection thereto and the attorney makes retraction in good faith; but where the record shows, as it does in this case, that an attorney has deliberately and repeatedly indulged in prejudicial argument to the jury, the effect of such misconduct can not be measured, and the only remedy is to grant a new trial. *Illinois Power and Light Corp.* v. *Lyon,* 311 Ill. 123; *Eshelman* v. *Rawalt,* 298 id. 192; *Bishop* v. *Chicago Junction Railway Co.* 289 id. 63; *Buckley* v. *Boston Elevated Railway Co.* 215 Mass. 50, 102 N. E. 75.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded.

*Reversed and remanded.*