Henry Reinmueller, Administrator of Estate of Kunigunda Reinmueller, Deceased, Appellee, v. Chicago Motor Coach Company and Herman Schrubbe, Appellants.

Gen. No. 44,914.

Heard in the first division of this court for the first district at the October term, ·1949. Opinion filed June 5, 1950. Released for publication June 26, 1950.

BARRETT, BARRETT, COSTELLO & BARRETT, of Chicago, for appellants; GEORGE F. BARRETT, JOHN W. COSTELLO, both of Chicago, and EDWARD WOLFE, of Springfield, of counsel.

LOUIS G. DAVIDSON and JOSEPH D. RYAN, both of Chicago, for appellee.

179

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Plaintiff Kunigunda Reinmueller sued defendants Chicago Motor Coach Company and Herman Schrubbe, its driver, to recover for injuries sustained by her in an accident which occurred at Western avenue and Addison street, Chicago, on March 4, 1948. There was a verdict finding both defendants guilty and assessing plaintiff's damages in the sum of $45,000 and judgment on the verdict, from which defendants appeal. While the cause was pending here, a motion was made suggesting the death of the plaintiff, and Henry Reinmueller, as administrator of the estate of Kunigunda Reinmueller, was substituted as appellee.

Defendants contend that the verdict was against the manifest weight of the evidence; that the trial court erred in refusing to direct a verdict for the defendants at the close of all the evidence; that the defendants were denied a fair and impartial trial by the misconduct of plaintiff's counsel in his argument to the jury; that there was error in the admission of evidence and the giving of instructions; and that the damages were grossly excessive and were the result of passion and prejudice.

Plaintiff had been a passenger on defendant's bus, westbound. She alighted from the bus at about 7:15 p.m. east of the northeast corner of the intersection of Addison street with a north and south street known as Western avenue, and walked to the corner, intending to cross Western avenue from east to west on the north crosswalk. The light having changed to green for pedestrians and traffic westbound, she started to cross the street when she was struck by the bus from which she had just alighted, and which was in the act of making a right turn into Western avenue from Addison street. She was thrown to the ground and her left leg severed below the knee as a result of

180

the right rear wheel of the bus passing over the leg. She also suffered a fracture of the right elbow, severe bruises, and other injuries.

Plaintiff in her own behalf testified that before starting across Western avenue she looked up and down the street and saw no traffic approaching; that she had reached the most easterly rail or had just entered the northbound streetcar track when she saw the bus from which she had just alighted swinging in a northwesterly direction directly toward her and about an automobile length away; that she attempted to step back to get out of the way. Her testimony on direct examination on this point is as follows:

"When I saw the bus coming towards me I was within a foot or two or so of the street car rail. As to what I did when I saw the bus coming, well, the bus was coming for me, I saw it and the bus was going, and I stepped back a little bit. Evidently I didn't step back enough and then the bus just hit me. The bus was just coming and hit me. It was on the right side of the bus behind the door, the bus hit me twice. I mean the side door on the right side, it struck me. When it struck me it knocked me down and my leg went under the wheels and the wheel got over my leg."

She testified that the driver did not sound a horn or give a signal of any kind before striking her; that the bus knocked her toward the north and east, and the bus, after passing over her leg, stopped a couple of feet beyond her, she lying about 10 feet in back of the rear wheels.

There was some dispute as to the speed of the bus, a witness for plaintiff fixing the speed at about 10 miles an hour as the bus was going around the corner, and defendant Schrubbe stating, "if I was going four miles an hour I was going fast."

Defendant Schrubbe testified that he did not at any time see the woman prior to the accident; that he

became aware of the fact that he had struck the plaintiff when he heard a thump on the back end of the bus and heard and saw someone on the safety island north of the crosswalk hollering and waving; that he applied his brakes immediately; that when he had stopped at Western avenue to discharge passengers he was parked within a couple of feet of the north curb and that in order for him to make the right-hand turn into Western avenue and allow. the bus sufficient clearance, it was necessary to pull out from the north curb toward the left or toward the southwest so that when he got out into Western avenue his bus was proceeding in a southwesterly direction; that he then turned to the north and to the right and that the bus had almost completed the turn when he heard the thump. Although on the trial he denied that there were people standing in the bus or that his view was obscured, testimony of certain police officers was introduced by way of impeachment, to the effect that in a statement shortly after the accident Schrubbe said that he did not feel the impact with the woman because "he had too many people on the bus and they were all crowded up around him and he couldn't see to the right."

Defendants' view of the case, that the plaintiff, regardless of her own safety, walked directly into the side of the moving bus, is based in large part upon the testimony of a witness, Klein, who testified that he was standing on the safety island on Western avenue, just north of the north crosswalk of Addison street. His direct testimony, in material part, is as follows:

"I saw her when she stepped off the curbstone down into the street. I saw her from the moment she started to run—from the moment she started to walk. I should say not running. When she stepped off of the curbstone down into the street the motor coach was prac-

182

tically half way around the corner. When she stepped off the curb I observed the coach continued. I observed the lady started walking briskly, walking across, but all of a sudden she stopped and she was close to the coach, and she kind of swerved to the right and they met each other. . . . As she was moving out into the street her head was kind of down, it was sort of a windy day or a windy evening I should say. When she came in contact with the bus I held my hand like that and I hollered 'Stop' to the driver. He stopped right away.''

██ There was considerable other testimony on both sides having to do with matters incidental to the main issue here involved, but the essential proof is to be derived from the testimony of the witnesses here reviewed. Even though the testimony of the police officers bearing upon the admission of defendant Schrubbe that he did not see the plaintiff because his view was obscured by persons standing on the front of the bus be disregarded, the fact that the bus made a wide sweeping turn from a southwesterly direction to a northerly direction and Schrubbe's vision being unobscured raises a question of fact as to whether or not in the exercise of due care Schrubbe should have seen the plaintiff before the accident. Our examination persuades us that the liability of the defendants was clearly and unmistakably established by a preponderance of the evidence. Our holding in this respect disposes also of the contention of the defendants to the effect that the trial court should have granted defendants' motion for a directed verdict.

██ It is argued with vigor by defendants that counsel for plaintiff was guilty of prejudicial and defamatory argument. We have carefully examined these arguments, as well as those of counsel for defendants. We find some statements in each which are

subject to criticism. Much of the argumentative matter of which defendants complain was plaintiff's reply to matters discussed by the attorney for defendants. One of the statements of which defendants complain as constituting reversible error appears in plaintiff's closing argument to this effect: "Counsel made some statement, which I couldn't quite hear, that I was mistaken about the police statement of the witness Ohlson. Now, do I understand you are not objecting to this police statement of Mr. Ohlson going into evidence?" Objection was made to the statement and sustained, after which plaintiff's counsel made this additional comment: "I don't want the slightest misunderstanding, Ladies and Gentlemen, about the reason you are not getting this statement of Mr. Ohlson to the police. I couldn't hear counsel very well as I sat back there, but I thought he was saying that I misunderstood him and he didn't object to it now. The statement of Mr. Ohlson is here and I have no objection to it, but I haven't any right to put it into evidence unless it is used against the witness." Counsel for defendants state that the purpose of counsel for plaintiff in making this statement was to suggest to the jury by insinuation that if it was admitted its contents would be unfavorable to the defendants. A number of cases are cited with which we are in accord, to the effect that counsel should not undertake to create a prejudice against the opposing party by arguing that if evidence which the court has held inadmissible had been admitted it would have been adverse to the opposite party. However, an examination of the entire argument here indicates that in his opening counsel for plaintiff stated to the jury that it was not permissible for him to put in evidence, for the purposes of corroboration, the statement the witness Ohlson had given to the police. Ohlson had testified, without objection, that at the time the rear wheels of the bus went over

184

some object its speed was 10 miles an hour "as I said in the police statement," and counsel's statement in his opening argument was to explain why the police statement had not been admitted. He further stated that if the witness had testified to acts different from those he related to police the defendants had the right to use the statement to impeach him, and defendants had not impeached him, but had objected to any reference to it. No objection was made to this argument. Later, defense counsel, in answering this argument, made the following statement to the jury: "So Mr. Ohlson gave him (the bus driver) his name that night. What was in Mr. Ohlson's mind at that time? He gave his name to the police that night, also. And counsel said we objected to the statement of the police. He is forgetting again, a very convenient lapse of memory. He interrogated Mr. Ohlson about what he said to the police. Did we object to it? No, because we had a statement from Mr. Ohlson that was given a day or so after this accident." It is not difficult to understand that this statement might be understood as meaning that counsel for defendant did not object to the police statement. We see no reversible error, under these circumstances, in the portion of the final argument quoted above of which defendants complain. It would unduly prolong this opinion to discuss each of the numerous objections made by defendants to plaintiff's argument, but on the whole we find nothing in the argument of plaintiff's attorney which would require a reversal of this case.

In *Walsh v. Chicago Rys. Co.*, 303 Ill. 339, in commenting upon a closing argument, the court said at page 351:

"This court has said more than once, that in arguing cases to the jury attorneys must be allowed to make reasonable comments upon the evidence. The interest of public justice requires that counsel should

not be subjected to unreasonable restrictions in this regard. (*Illinois Central Railroad Co. v. Beebe,* 174 Ill. 13; *Chicago City Railway Co. v. Creech,* 207 id. 400.) Whether or not an objection should be sustained to remarks made in argument by an attorney in the trial of a case and whether his objectionable remarks should be held to be error may depend upon the preceding argument of opposing counsel.''

 Several of the statements denounced are inferences which plaintiff's counsel was entitled to deduce from the evidence. Wide latitude should be allowed in this regard. If the rule with reference to improper inferences were applied as strictly as counsel for defendants urge, it would have a tendency to deprive litigants of the right of having their cases argued, for the prudent attorney would in such case forego argument rather than risk reversible error. In *Commonwealth Elec. Co. v. Rose,* 214 Ill. 545, the court said at page 561:

''Counsel may arraign the conduct of the parties, and impugn, excuse, justify, or condemn motives, so far as they are developed in evidence, or assail the credibility of witnesses when it is impeached by direct evidence, or by inconsistency, or incoherency of their testimony, their manner of testifying, their appearance upon the stand, or by circumstances. 'He may argue such conclusions from the testimony as he pleases, provided he does not misquote witnesses.' . . . It has been said: 'Just and fierce invective, when based upon the facts in evidence and all legitimate inferences therefrom, is not discountenanced by the courts.' . . . .''

 The jury were fully and fairly instructed upon all issues in this lawsuit, including the matters which defendants claim were unfairly argued, and we are not to presume that they were dissuaded from the duty clearly and emphatically impressed upon them in the many instructions of the trial judge by the heated

remarks of partisan counsel. Complaints about the argument were heard by the careful trial judge, not only during the course of the trial, but also on the motion for a new trial. He overruled this motion. Upon due consideration we are of the opinion that he was justified in so doing. In the case of *County of Jackson v. Wayman,* 369 Ill. 123, the court said:

"It is only where it appears that the trial judge has abused his discretion in this matter and that the jury has been misled by improper remarks of counsel that we will set aside a verdict on this ground."

In *North Chicago St. R. Co. v. Cotton,* 140 Ill. 486, the court said at page 503:

"Every reasonable presumption must be indulged in that the trial judge has performed his duty and has properly exercised the discretion vested in him, and that he has permitted no misconduct of counsel materially prejudicial to the opposite party to intervene, unless such misconduct and its prejudicial nature are clearly shown by the record."

 Complaint is made of the giving and refusing of certain instructions. In this case 16 instructions were given on behalf of defendants, and two instructions were refused. Twenty-two instructions were given on behalf of plaintiff. In all, 40 instructions were tendered and 38 instructions given on behalf of both parties. While we take this occasion to repeat what has so often been said by this court, that the giving of this number of instructions in a suit involving simple issues places an undue burden upon the trial court, nevertheless, in the instant case we find no prejudicial error either in the giving or refusing of instructions. Every phase of the case was fully and completely covered, and we feel that the jury had a thorough understanding of all the issues involved. Neither do we find any prejudicial error in the admission or rejection of evidence.

██ Complaint is made that the damages awarded by the jury were grossly excessive and were the result of passion and prejudice. The injuries here were undisputed; they were of such nature as to leave no room for dispute. This 68 year old woman's leg was severed, the bone was crushed and there was nothing left of the soft part except the enveloping skin. Traction was applied to the skin about the stump in order to pull it down to cover it and this treatment continued for about eight weeks. Infection, complicated by diabetes, set in and had to be treated while the patient was in the hospital. Skin grafts were necessitated and the patient underwent major operative procedures at least three times and was taken to the operating room on 18 or 20 other occasions. She had a number of blood transfusions and was in the hospital from March 4th to May 29th. In addition, she suffered a fractured right elbow, the break extending into the joint, and an injury to her right leg and ankle, which was accompanied by pain and swelling. She testified as to long and continuous pain. Medical expenses up to the time of the trial were approximately $5,325, and there were continuing expenses, such as $30 a week for a practical nurse and attendant and medicines. The evidence showed that although the plaintiff suffered from diabetes it was well controlled and that she was vigorous and active prior to the injury, and that as a result of the injury she had become totally dependent upon the physical assistance and care of others. The jury were entitled to consider the pain and suffering undergone, the disfigurement and mutilation, as well as the decreased purchasing power of the American dollar, and the fact that the continuing disability of the plaintiff would require the care and services of a nurse or attendant for the remainder of her life. In view of all these circumstances we are unable to say that the amount awarded is excessive.

The judgment of the superior court of Cook county is therefore affirmed.

*Affirmed.*

FEINBERG, J., concurs.

NIEMEYER, J., dissents. This dissent is limited to the unpleasant duty of considering the improper argument and conduct of experienced counsel for plaintiff and the failure of the trial judge to rule effectively, preserve the dignity of the court and procure for defendants a fair and orderly trial.

In his closing argument plaintiff's counsel summarizes his complaint as follows:

"But his (the driver's) harm wasn't in his speed. That was only a factor in this case. It was everything,—the fact that the man started up without paying any attention, without obeying the law which says he has to warn a person if he is going to turn upon them, that he has to give a warning before turning, that he shall not make a turn until he can do it with safety. All of those things brought this accident about."

Defendants deny the negligence charged and in addition urge the contributory negligence of plaintiff as a defense.

In addition to the matters stated in the opinion of the court, the following facts and testimony are material. The intersection of Western avenue and Addison street was well lighted. Addison street was barricaded to the west and westbound buses detoured to the north on Western avenue. The bus was well lighted inside and outside. The headlights were on. Neither the driver nor the passengers on the bus called as witnesses saw the plaintiff before the bus stopped after plaintiff had been injured. Their attention was directed by a thump on the side of the bus or the rise and fall of the right rear wheel in passing over

something—plaintiff's foot. They estimated the speed of the bus at from 4 to 10 miles per hour. On cross-examination plaintiff testified that she had stepped over the first rail of the car tracks when she saw the bus the length of an automobile, 20 to 25 feet from her; that the bus was turned and almost headed north and the front was north of the north curb line. Klein, called by the defendants, testified that when the bus was practically half way around the corner he saw the plaintiff step off the curbstone into the street.

Reference is made to the evidence to show that the case was close and a jury might reasonably have returned a verdict for either party. The damages awarded are large and liberal, even when measured by the generous standard adopted by jurors. Where that is the state of the record the trial must be conducted in an orderly manner so that the jury will not be improperly influenced. *Mattice v. Klawans,* 312 Ill. 299.

Defendants make five assignments of objectionable statements and conduct of plaintiff's counsel in his closing argument. The first relates to a statement to the police by Ohlson, a witness for plaintiff. On the day following the accident Ohlson gave a statement to the police and on the next day he gave one to defendant company. He testified on direct examination, without objection by defendants, that the police took a statement from him and that the speed of the bus "as he said in the police statement, it was about 10 miles an hour." Defendants' counsel did not cross-examine him as to the police statement. On redirect examination defendants objected to a question as to whether Ohlson answered all questions of the police fully and truthfully. The impropriety of this question is obvious. Plaintiff introduced Ohlson's statement to defendant company in evidence without objection. Neither party offered the statement to the police.

190

Hence there was no objection to its introduction. In his opening argument plaintiff's counsel told the jury that he could not use the police statement to corroborate Ohlson but that defendants could use it to impeach him, and "You can draw your own conclusion. They did not use the police statement. They objected to any reference to it." In referring to this argument defendants' counsel said: "He interrogated Mr. Ohlson about what he said to the police. Did we object to it? No." Neither counsel was wholly accurate in his statement of the record. However, there was nothing in the statement of defendants' counsel on which to base a legitimate claim of consent to its introduction during argument. The closing argument of plaintiff's counsel opened as follows:

"Mr. Davidson: Counsel made some statement, which I couldn't quite hear, that I was mistaken about the police statement of the witness Ohlson. Now, do I understand you are not objecting to this police statement of Mr. Ohlson going into evidence?

Mr. Costello: That statement is objected to, if the Court please. As counsel well knows, it is improper.

Mr. Davidson: You said to the jury that I misunderstood and you weren't objecting to it.

Mr. Costello: I am objecting to this improper conduct, Your Honor.

Mr. Davidson: In view of his argument, I am asking him now,—

Mr. Costello: I am objecting to this, if the Court please.

The Court: Well, objection sustained.

Mr. Davidson: All right.

I don't want the slightest misunderstanding, Ladies and Gentlemen, about the reason you are not getting this statement of Mr. Ohlson to the police. I couldn't hear counsel very well as I sat back there, but I thought he was saying that I misunderstood him and he didn't

191

object to it now. The statement of Mr. Ohlson is here and I have no objection to it, but I haven't any right to put it into evidence unless it is used against the witness or,—

Mr. Costello: I object to the statement of counsel as improper argument.

Mr. Davidson: I have a right to explain why I have not put it in evidence in view of his statement. Now, I want—

Mr. Costello: Your Honor, I object to the statement of counsel.''

A question as to the sincerity of counsel's position that he ''couldn't quite hear'' arises from his statement immediately after the first objection: ''You said to the jury that I misunderstood and you weren't objecting to it.'' If the experienced counsel representing plaintiff was in fact uncertain as to the remarks of his opponent as to the police statement, he should have informed himself as to the exact words of opposing counsel by inquiry, out of the presence of the jury, of counsel or the court reporter. In no event was he justified in interrogating defendants' counsel in the presence of the jury and thereby placing him in a position where he must either consent to the introduction of the statement or be put in an unfavorable position before the jury by his refusal. The challenging of an opponent in the presence of a jury to waive his legal rights and allow the introduction of evidence which otherwise would be barred, is universally held to be misconduct on the part of counsel. *Bishop v. Chicago Junction Ry. Co.*, 289 Ill. 63; *Mattice v. Klawans, supra,* pages 306, 307; *Paliokaitis v. Checker Taxi Co.,* 324 Ill. App. 21; 53 Am. Jur., Trial, § 459; 3 Am. Jur., Appeal and Error, § 1061.

The prejudicial effect of the first statement of plaintiff's counsel, to which defendants' counsel imme-

diately objected, was greatly aggravated by the failure of the court to rule effectively and the persistence of counsel in repeating his prejudicial statements. After three objections the court said, "Well, objection sustained." There was no admonition to the jury to disregard the statement. Plaintiff's counsel immediately told the jury, "I don't want the slightest misunderstanding . . . about the reason you are not getting this statement of Mr. Ohlson to the police. . . . The statement of Mr. Ohlson is here and I have no objection to it. . . ." Objection was again made and counsel again insisted on his right to explain why he had not put the statement in evidence. Defendants again objected but the court did not rule. In *Bell v. McDonald,* 308 Ill. 329, 341, the court said:

"It was unfair argument, and counsel on the first ruling of the court should have desisted from further argument of that character. He persisted, however, against repeated rulings of the court, and in a close case as this was, such a course was necessarily prejudicial to the appellant."

In *Chicago North Shore & M. R. Co. v. Chicago Title & Trust Co.,* 328 Ill. 610, 625, the above case was cited and the court said:

"The court should have sustained an objection to the entire remark and directed the jury to disregard all of it, and counsel should have obeyed the ruling and not repeated the remark. . . . Such conduct does not indicate very much desire on the part of counsel to abide the rulings of the court and to limit himself to proper argument, but indicates a purpose to disregard the ruling, persist in such conduct, and by so doing appeal to the passions and prejudices of the jury."

In *Forest Preserve Dist. of Cook County v. Alton R. R. Co.,* 391 Ill. 230, the court said:

"In arguing a case to a jury, counsel are privileged to discuss the evidence introduced and all reasonable inferences that may be drawn therefrom, but they should not undertake to create a prejudice against the opposing party by arguing that if evidence which the court has held inadmissible had been admitted, it would have been adverse to the opposing party. Such conduct is beyond the scope of proper argument. . . . Where the court sustains an objection to a statement of counsel, it is the duty of counsel to desist from further argument of that character. . . . The improper argument of counsel for appellee and his repeated attempt to present such matter to the jury requires a reversal and remandment of this cause for a new trial."

In respect to the duty of the trial judge, the Supreme Court said in *Bishop v. Chicago Junction Ry. Co.*, *supra:*

"The power vested in the court should have been promptly used in this case at the outset by stopping the line of argument upon which the attorney had entered and endeavoring to remove the prejudice excited by his language. The court failed in its duty, and the mere sustaining of objections was no adequate remedy for the evil done."

In *Illinois Power & Light Co. v. Lyon*, 311 Ill. 123, the court again had occasion to comment on the failure of the trial court to meet its responsibility in the conduct of the trial. It said (p. 126):

"When objections were made to such unfair and improper arguments the court had a duty to perform, and the mere perfunctory statement on each occasion that counsel should confine himself to the evidence was not a ruling on the objection made or in response to it. It was not a discharge of the duty of the court as a factor in the administration of justice and nothing

more than friendly advice to the attorney to be good. The attorneys were not talking about the evidence but were attempting to create prejudice, and a judgment founded on a verdict tainted with such an argument cannot be permitted to stand. It was the duty of the court to rule on the objection, put a stop to the argument and see that it was not repeated, and if it appeared from the verdict that the action of the court was not a sufficient remedy for the wrong done, a new trial should have been granted.''

The injurious effect of the dereliction of the court is shown by what followed. On cross-examination of the witness Ohlson he testified: ''I must have volunteered to give my name to the bus driver.'' Defendant's counsel argued that the volunteering of his name indicated that the driver was not at fault. In reply to this argument the following occurred:

''Mr. Davidson: He tells you that Mr. Ohlson tendered his name to the driver and the driver didn't ask for it. I haven't heard any such testimony, that the driver didn't ask his name. Counsel characterized it as a volunteering of Mr. Ohlson's name. Isn't it significant when you think about it? . Here is a bus with about sixty or seventy people in it, mostly men and women, and yet no one apparently came forward to say,—nobody on the bus, to say there was nobody in the front of this bus when it started to make the turn, nobody on the crosswalk,—

Mr. Costello: If the Court please, I object to this argument.

Mr. Davidson: Do you think the bus driver didn't make an effort to get the names of the,—

Mr. Costello: I object.

Mr. Davidson: Do you think it happened in this way?

The Court: Well,—

Mr. Davidson: I don't know what the objection is, frankly.

195

Mr. Costello: It is improper argument and counsel knows it is. I object to it, if the Court please.

Mr. Davidson: I say it is proper, absolutely proper argument. *If this accident happened the way you contend, you would have a dozen people here for you.* (Emphasis added.)

Mr. Costello: That is objected to, if the Court please.

Mr. Davidson: I think these objections are unfair. I think these interruptions are absolutely unfair in this presentation of proper argument.

Mr. Costello: Counsel knows that it isn't proper closing argument and I am objecting to this line of argument because counsel knows, and the court knows, it has been repeatedly held to be improper. If the Court please, I object to it.''

As shown above, defendants' counsel objected five times without getting any response from the court except, ''Well,—,'' —interrupted by plaintiff's counsel. This failure of the court to rule undoubtedly left the jury with the impression that the argument was proper, especially in view of the protest of plaintiff's counsel: ''I think these interruptions are absolutely unfair in this presentation of proper argument.'' Unfortunately for plaintiff's counsel, his argument was not proper. The court should have sustained defendants' objection promptly and rebuked plaintiff's counsel for persisting in his argument. As heretofore stated, neither the driver nor any passengers on the bus called as witnesses saw plaintiff until she was on the pavement, after the bus had run over her foot. There is no evidence that any of the other passengers saw plaintiff before that time, or saw anyone on the crosswalk or in front of the bus when it started to turn. There is no evidence that defendants had the names of any witnesses not called who had knowledge of facts material to the issues. It is only when the evidence shows affirmatively that a party has control or knows of avail-

able witnesses who can testify to material facts that any presumption arises from failure to produce such witnesses. As said in *Marriage v. Electric Coal Co.,* 176 Ill. App. 451: ''Commenting on the absence of witnesses related to the parties to the suit, who are shown to have knowledge of the case, was proper, but comment concerning the absence of parties not shown to know anything about the case was not permissible and was only made for the purpose of appealing to the prejudice of the jury.'' In the case of *Fisher v. Philadelphia Rapid Transit Co.,* 274 Pa. 90, 117 Atl. 777, it appears there were 15 or 20 passengers on a trolley car at the time of the accident; that the conductor and motorman took the names of such of those persons who were willing to comply with the request and give whatever information, if any, they possessed concerning the accident; counsel for plaintiff referred to the failure of the defendant to call these witnesses. The trial court refused to instruct the jury to disregard the statement of counsel. The reviewing court said: ''Under these circumstances it was error to permit the jury to draw unfavorable inferences against defendant for failure to call as witnesses passengers on the car, unless it first appeared the latter had knowledge or peculiar means of knowledge of facts germane to the issue. The failure of the trial judge to instruct the jury as requested constituted sufficient error to require us to send the case back for another trial.'' In *El Paso City Lines, Inc. v. Prieto,* 191 S. W. 2d 59 (Tex.), counsel for plaintiff commented in his argument to the jury that defendant, out of 35 people on the bus, could have found some ''good substantial man if they had tried to.'' The court condemned the argument and said:

''There was no evidence that any of the thirty-five passengers were men better qualified to testify than the witnesses who did testify or that their testimony

was available. Inferences as to such facts would have to be indulged to warrant the further inference that such testimony would have been adverse to appellant. *Proctor v. Cisco & N. E. R. Co.*, Tex. Com. App., 277 S. W. 1047. What the other passengers on the bus might have sworn to was mere conjecture and not a subject for legitimate comment."

On redirect examination Dr. Lambert, an orthopedic expert called by plaintiff, was asked if he knew Dr. Greenspahn, "who has been running in and out, passing notes to Mr. Costello," and he replied that he knew who he was. There is no other reference to Dr. Greenspahn until the closing argument when plaintiff's counsel, referring to Dr. Lambert's testimony, said:

"There isn't anything about his testimony that wasn't right or they would have had their staff of doctors in here. What did they do? They had Doctor Greenspahn slipping surreptitiously in and out of court,—." Whereupon the following colloquy took place:

"Mr. Costello: I object. I object to that, if the Court please.

Mr. Davidson: The jury saw what happened.

Mr. Costello: I object.

Mr. Davidson: And one of their investigators, Mr. Mackin.

Mr. Costello: I object to that.

The Court: Well, objection sustained.

Mr. Davidson: I have a right to comment on what took place in this courtroom.

Mr. Costello: I object, if the Court please.

The Court: That is correct. On the evidence here.

Mr. Costello: And I am objecting to that, Your Honor.

Mr. Davidson: That is their medical evidence. Now, it happens Doctor Greenspahn didn't go on the stand and look at those films and say that Doctor Lambert is exaggerating,—

Mr. Costello: I object, if the Court please.

Mr. Davidson: —and say Doctor Lambert isn't telling the truth.

Mr. Costello: I object. There isn't any evidence that Doctor Greenspahn was here for the Motor Coach Company.

Mr. Davidson: Why, are you contending that he,—

Mr. Costello: I object.

The Court: Objection sustained.

Mr. Davidson: Just some more of the kind of defense that has been offered here.

Mr. Costello: I object to that, if the Court please.

Mr. Davidson: Just some more of the kind of defense,—

Mr. Costello: I object to that. I object, if the Court please."

There is nothing in the record to justify counsel's statement in his redirect examination of Dr. Lambert that Dr. Greenspahn had been "running in and out, passing notes to Mr. Costello," or to show that Dr. Greenspahn was in the employ of defendant company and had been "slipping surreptitiously in and out of court." Neither is there anything in the record to indicate that Dr. Greenspahn was an X-ray expert or that he had examined the films in evidence. If anything had transpired in the presence of the jury which was not disclosed by examination of the witnesses, admissions by counsel and the statements of the court incorporated in the transcript of proceedings, it was the duty of plaintiff's counsel to have such matters certified by the court. In the absence of such certification we cannot assume that the statements of plaintiff's counsel, outside the evidence, were supported by facts. It is elementary that arguments to the jury must be confined to testimony and matters appearing in the record. Counsel cannot supply facts by statements in argument. *Appel v. Chicago City Ry. Co.*, 259 Ill. 561,

569, 570; *Wellner v. New York Life Ins. Co.*, 331 Ill. App. 360. In *Rice v. Hill*, 315 Pa. 166, 168, where a similar argument was made, the court said:

"This court has consistently held that counsel has no right under the guise of 'argument' to introduce into a case facts that are prejudicial to the opposing party. The *facts* of the case must go to the jury by way of the witness box. Counsel during the course of their arguments cannot be permitted to assume the role of unsworn and unrestricted witnesses, though they do have the right to use well known facts from history and literature and current events to strengthen and embellish their arguments. The fact that the defendant had a physician in court whom it did not choose to call to rebut the testimony of plaintiff's physician was a fact not in evidence and not admissible in evidence, for there was nothing in the record to show that he had examined the plaintiff and possessed any professional opinion as to the extent of his injuries, *and yet the fact stated by plaintiff's counsel in his argument was well calculated to lead the jury to believe that the opinion of defendant's physician as to plaintiff's injuries agreed with the testimony of plaintiff's physician.* It was therefore a prejudicial fact which got to the jury but not by way of the record." (Emphasis supplied.)

Furthermore, the words "slipping" and surreptitiously" imply secrecy and stealth. "Surreptitiously" also means, in an underhand way. The use of these words by plaintiff's counsel undoubtedly was intended to and did create an impression in the mind of the jury of dishonesty and furtiveness in Dr. Greenspahn's conduct. Their use was prejudicial and without basis in the evidence. After three objections by defendants' counsel the court perfunctorily said, "Well, objection sustained." Refusing to submit to the ruling of the court, plaintiff's counsel kept insisting on his position.

Defendants' counsel objected five times before the court finally sustained the objection, eliciting from plaintiff's counsel the statement, "Just some more of the kind of defense that has been offered here." This statement was repeated, and each time objection was made without any ruling by the trial court. Shortly thereafter plaintiff's counsel made a similar charge, saying: ". . . they have offered a defense here that is not to their credit against a woman who was hurt, hurt badly as this lady was. He can protest all he wants to about their not thinking they are liable, but when you see the kind of defense they offer and that they would never come in here in one thousand years and admit their responsibility." Objection to this statement was sustained. The defenses offered were legitimate defenses. There is nothing to indicate that they were not offered in good faith. As heretofore stated, the evidence was close and the jury could reasonably have awarded a verdict for either party. Consequently there was no warrant for attacking the sincerity of the defense. It is only when there is something in the record affording a reasonable basis for the statement, that charges of dishonesty, bad faith or insincerity in the defense is permissible. In *Paulsen v. McAvoy Brewing Co.*, 220 Ill. 273, 289, the court condemned a statement of counsel in argument—"There is no defense to this action. He knows it, I know it, you know it. So he conceived that it is his duty in the interest of this brewery company to come in here and compel this poor man Paulsen to sit here on the front seat—." In *Chicago & A. R. Co. v. Scott*, 232 Ill. 419, 423, the court said:

"A court owes a duty of protection to witnesses and parties, and especially to witnesses, and hearing an attorney, under the guise of argument, abusing his privilege, should, either upon objection *or its own motion*, check the attorney, and not only do that, but pre-

201

serve the dignity of the court by compelling obedience to its order. (2 Ency. of Pl. & Pr. 750.) It is the duty of a court to preserve its own dignity and the respect due to the courts and the administration of the law by not allowing an attorney, under the pretense of arguing the case, to indulge in abuse of parties or witnesses. (*City of Salem v. Webster,* 192 Ill. 369.)'' (Emphasis supplied.)

To the same effect is *Chicago North Shore & M. R. Co. v. Chicago Title & Trust Co., supra.*

The defendant driver of the bus testified that he finished out the week of the accident, went on his vacation for two weeks, worked another week; that he made application for the fire department of LaGrange, where he was working at the time of the trial, and resigned from defendant company. In his closing argument plaintiff's counsel asked the jury whose word they would take, the word of the police officer or ''the word of the driver who is now being sued and charged with fault, who has every motive to clear and exculpate himself? I should say this former driver, who rather suddenly resigned after the accident, about a week or two later.'' Defendants' objection was overruled. The phrase ''rather suddenly resigned'' undoubtedly suggested, and was intended to suggest to the jury, that the resignation was in fact a discharge of the driver and an admission by the defendant company that negligence of the driver caused plaintiff's injury. Otherwise there could be no purpose in directing their attention to his resignation. (*Mattice v. Klawans, supra,* p. 309.) The statement was grossly improper. Plaintiff could not show that the driver had been discharged if that had been the fact. The situation is not unlike an attempt to show subsequent change or repairs to machinery, sidewalks or other instrumentalities the condition of which is material to the issues of a case. Such evidence is not admissible as an implied admission of

202

negligence of the defendant. *Howe v. Medaris,* 183 Ill. 288; *City of Taylorville v. Stafford,* 196 Ill. 288; *Garshon v. Aaron,* 330 Ill. App. 540. There being no evidence even tending to show that the driver was discharged, plaintiff's counsel could not legitimately, by disparaging phrase of innuendo, get into the record that which he was not permitted to prove. *Rost v. F. H. Noble & Co.,* 316 Ill. 357.

The Supreme Court has never hesitated to reverse judgments obtained by deliberate and repeated indulgence in prejudicial argument to the jury. (Cases heretofore cited.) This court has uniformly set aside judgments obtained by such conduct. *Hayes v. New York Cent. R. Co.,* 328 Ill. App. 631; *Wellner v. New York Life Ins. Co.,* 331 Ill. App. 360; *Gordon v. Checker Taxi Co.,* 334 Ill. App. 313. In the latter case we quoted with approval the statement in *Bishop v. Chicago Junction Ry. Co., supra,* p. 71, that

"While it is regrettable that this case must be reversed because of improper conduct of intelligent and able counsel, yet if courts of law are to be sources of justice, the rule that parties litigant, regardless of who they may be, shall have secured to them the opportunity to have the issues of their case tried by a jury free from the prejudicial influence of improper conduct of counsel must be strictly enforced."

Because the rule stated is sound and promotive of a fair, just and orderly administration of trials, and is particularly applicable to the instant case, this dissent is closed with the words of the court in *Mattice v. Klawans, supra,* p. 310:

"It is the province and duty of the courts to see that every litigant has a fair trial in accordance with the law, and a verdict obtained by unfair and unprofessional conduct of an attorney will not be permitted to stand. While it is true that an attorney may in the

course of a trial inadvertently make improper remarks, the prejudicial effect of such a statement is usually removed where the court promptly sustains an objection thereto and the attorney makes retraction in good faith; but where the record shows, as it does in this case, that an attorney has deliberately and repeatedly indulged in prejudicial argument to the jury, the effect of such misconduct can not be measured, and the only remedy is to grant a new trial." (Citing cases.)